## OLNEY *against* WICKES.

*An overseer of the poor of a town, who contracted with the plaintiff for the maintenance of a pauper, for which he agreed to pay a certain sum per week, was held not to be personally responsible on the contract ; as, from the facts and circumstances of the case, it did not appear that he intended to bind himself personally.*

*Where a public agent or officer acts ostensibly in the line of his official duty, his contracts are public, not personal : It seems, that an express promise to pay, does not establish the criterion of personal responsibility ; and where the transaction shows the engagement to be on account of the public, it is not necessary, in order to avoid his own liability, that the officer should expressly say that he contracts in his official capacity.*

THIS was an action of *assumpsit,* tried before Mr. Justice *Van Ness,* at the *Rensselaer* circuit, in *December,* 1818. The declaration was for board and lodging, meat, drink, and

other necessaries, &c. provided at the request of the de- fendant for *Francis Lona* and his wife, &c.   Plea, *non as-sumpsit,* with notice that the promises stated, if made at all, were made by the defendant, in the character of an *over-seer of the poor* of the town of *Schagticoke,* and not in his individual capacity.

*J. Mosher,* a witness for the plaintiff, testified that he was present, on the 19th of *July,* 1816, when the defendant agreed with the plaintiff to give him three dollars a week, for boarding *Francis Lona* and his wife ; and the plaintiff, who resided in *Saratoga* county, accordingly took the pau-pers home with him.   On his cross examination, the wit-ness said, that he was a constable of *Saratoga,* and had an order of the justices of that place, to transport *Lona* and his wife, as paupers, from that town to *Schagticoke,* in the county of *Rensselaer,* and employed the plaintiff with his carriage for that purpose ; that he passed the *Hudson,* when he met the defendant, an overseer of the poor of *Schagticoke,* about half a mile from his abode, and delivered the paupers to him, with the order of removal; that the defendant accepted the paupers and the order, and said that he had expected them, and on consultation with the inhabitants of *Schagticoke,* it was concluded that the town would have to keep them.   That at the time he so deli-vered the paupers and the order to the defendant, he sup-posed that he was in the town of *Schagticoke;* but has since understood that it was in the town of *Easton,* in *Wash-ington* county, near the line.   That the agreement between the plaintiff and defendant about keeping the paupers, was subject to be terminated at the pleasure of either party.In *January,* 1817, the plaintiff told the defendant that he could not keep the paupers longer, for less than five dollars a week.   On the 3d of *July,* 1817, the plaintiff sent the paupers back to the defendant, who was not at home at the time, and his family informed the person who brought them, that a Mr. *Curtiss* was the overseer of the poor, and di-rected that they should be delivered to him, which was accordingly done.

A witness for the defendant, testified that he was present when the agreement was made between the plaintiff and

defendant, who was an overseer of the poor of *Schagticoke.*
The plaintiff offered to keep the paupers at three dollars a
week; and the defendant said he would give it; that he
could advance nothing then, but the plaintiff might be
sure of his money. It was thereupon agreed, that the
plaintiff should take the paupers. The defendant said that
it was his duty, as overseer, to get the board as cheap as he
could, as he was acting in the town business. Mr. *Curtiss*
testified that he succeeded the defendant as overseer of
the poor; that in *November*, 1817, the plaintiff requested
him to fulfil the contract which he had made with the for-
mer overseer, and threatened to sue him. The witness
said he was not liable; and as the plaintiff insisted that he
was liable as overseer, they advised with a lawyer, who gave
his opinion that the witness was not liable; and the plaintiff
then sent word to the defendant, that if he did not pay his de-
mand, he would sue him. Another witness who was present
when the agreement between the plaintiff and defendant was
made, testified that the defendant told the plaintiff, that he
could not advance any thing; that he had already advanced
his own, and the public money, in maintaining paupers; but
that the plaintiff need not fear being paid; that his money
was sure, and that the town was rich.

The judge expressed his opinion that the action could
not be maintained; that the defendant contracted as *over-
seer of the poor*, and must, therefore, be sued in that charac-
ter, and not in his individual capacity; but said the plain-
tiff might, if he pleased, take a verdict subject to the opi-
nion of the Court on the question. A verdict was, accord-
ingly, taken for the plaintiff, for 219 dollars, subject to the
opinion of the Court on the case above stated.

*Livingston,* for the plaintiff.

*Mitchill,* contra.

PLATT, J. This is an action of *assumpsit,* for meat, drink,
and lodging, furnished by the plaintiff to one *Francis Lona
and his wife,* at the request of the defendant. The only
question is, whether the defendant contracted as a *private*

*individual,* or in his *official character,* as one of the overseers of the poor of the town of *Schagticoke?*

There is no longer any question as to the rule of law, that where a public agent acts ostensibly in the line of his duty, his contracts are *public,* and not *personal.* It is also clear, that a known public agent, acting within the scope of his authority, and contracting for the use of the public, may by special agreement, superadd his personal responsibility, so as to render himself individually liable : but (as was correctly remarked by Ch. J. *Marshall,* in *Hodgson* v. *Dexter,*) " under these circumstances, the intent of the officer to bind himself personally, must be very apparent, indeed, to induce such a construction of the contract."

As in most other cases, the difficulty here, is in the application of the rule. It is a question of intention in the contracting parties, to be collected from all the facts and circumstances of the case.

(The Judge here stated the facts of the case.)

From this evidence, I think the fair inference is, that the parties mutually understood that the defendant contracted as overseer of the poor. In saying that " *he was acting in the town's business,*" that " *the town is rich,*" and " *you will be sure of your money,*" the idea of personal liability seems to be repelled ; and the subsequent demand on the defendant's successor in office, confirms the supposition, that it was regarded as the contract of a *public agent.*

In the case of *Gill* v. *Brown,* (12 *Johns. Rep* 385.) there was not only an *express promise to pay,* on the part of *Brown,* (who was quarter master,) but the decisive feature in that case was, that it was a contract *not within the regular scope of his authority.*

In *Walker* v. *Swartwout,* (12 *Johns. Rep.* 444.) the promise by *Swartwout,* was as *express* and *positive,* as could be framed : " *my word is sufficient : go to your work, and I will pay you when it is done.*" Yet, as it appeared that the defendant spoke with reference to the public service under his charge, as quarter master general, this Court, (*Thompson,* Ch. J. dissenting,) decided that he was not personally bound : and I refer, with great satisfaction, to the concise and discriminating review of the adjudged cases, by Mr. Justice *Spencer,* who delivered the opinion of the Court.

In *Brown* v. *Austin,* (1 *Mass. Rep.* 208.) the same rule was sanctioned : viz. that *an officer treating as an agent for the public,* is not personally liable.

In *King* v. *Butler,* (15 *Johns. Rep.* 281.) the defendant, being overseer of the poor, " requested and directed the plaintiff to provide all things necessary" for the recovery of a sick stranger then at the plaintiff's house, and said " *he would see the plaintiff paid.*" The plaintiff furnished the necessaries accordingly ; and then presented his account to the board of supervisors, as a county charge, for supporting a transient sick pauper, which was rejected by the supervisors, because the overseer had never obtained a justice's order for the relief. The plaintiff then sued the overseer ; and it was held, that he was personally liable. One ground of that decision was, that the officer had neglected his duty in not obtaining the justice's order, which was an indispensable voucher at the board of supervisors. But it is also worthy of remark, that the form of contracting, " *I will see you paid,*" was in the style of a special guaranty ; and distinguishable in some degree from the present case.

I cannot admit, however, that *an express promise to pay* by the contractor, forms the criterion of personal responsibility. For the question recurs, in what character does he contract ? As a public agent, or as a private person ?

Where the *res gesta* and the attending circumstances, show the contract to be on public account, it is not necessary, in order to screen him from personal liability, that the contractor should expressly say, *I contract as quarter master,* or I promise to pay *as overseer of the poor.*

The case of *Macbeath* v. *Haldiman,* (1 *Term Rep.* 172.) and the case of *Hodgson* v. *Dexter,* (1 *Cranch,* 345,) are polar stars, which, in my judgment, guide us to a decision in favour of the defendant in this case.

VAN NESS, J. and YATES, J. concurred.

SPENCER, Ch. J. dissenting. If the defendant rendered himself personally liable to the plaintiff on his contract, to pay for the maintenance of the paupers, then the two obs-

jections, that the suit should have been against him as over-seer of the poor, &c. and that the venue should have been laid in *Washington* county, fall to the ground.

The defendant's official character in the supposed case, is not the principal basis of the action; it may have had its influence in producing the promise, but the plaintiff did not rely upon it. It is not necessary to state it. Where the right of action against an officer, is founded on the obligation of law, unconnected with any contract between the parties, then the office of the defendant must be stated, and the circumstances which gave rise to the defendant's particular duty or liability, as in actions against sheriffs, carriers, inn keepers, &c. (1 *Chitty Pl.* 369.)

It is not a case within the act; (1 *R. L.* 155.) the statute requires that where actions on the case, trespass, battery, or false imprisonment, are brought against any sheriff, &c. and including overseers of the poor, for, or concerning any matter or thing by them done by virtue of their office, the action is to be laid within the county where the trespass or fact is done; and if on the trial, the plaintiff shall not prove that the cause of his action arose within the county wherein such action is laid, the jury shall find the defendant *not guilty.*

This statute, by " actions on the case," evidently meant actions for mis-feasance or non-feasance, and sounding in *tort,* for the verdict is to be not guilty, and the promise of the defendant, if personally binding, is not to be regarded as an official act.

The judge who tried the cause, expressed a pretty decided opinion, that the defendant contracted as overseer ; and ought to have been sued in his official, and not in his individual character.

In the case of *King v. Butler.* (15 *Johns. Rep.* 281.) we held that the overseer was liable to a suit, where he had requested the plaintiff to maintain the pauper, and made an express and absolute promise to pay him for the same. This case is governed by the principles applicable to the question, whether credit was given to the individual in his private capacity, or as an agent of the town. In *Gill* v. *Brown,* (12 *Johns. Rep.* 388.) Chief Justice *Thompson* observed,

NEW-YORK, that it is a question of intention, and if the agreement shows
May, 1820. that the contract was made evidently on public account,
without a view to the personal responsibility of the agent,
he will not be liable.    But where, as in the case of *Walker*
v. *Swartwout*, (12 *Johns. Rep* 446.) the agent makes an
express promise, in his own name, and not in the name or
on behalf of his principal, the agent ought to be held per-
sonally responsible.    So, also, in the case of *Brown* v. *Aus-
tin*, (1 *Mass. Rep.* 208.) it was held, that an agent, by an
express promise to pay, rendered himself personally res-
ponsible.

The proof in this case is very positive, that the defend-
ant's engagement was precise and express, to pay the plain-
tiff three dollars per week, for keeping the paupers; and
there can be no reasonable doubt that the plaintiff was in-
duced to take, and provide for the paupers, relying on the
defendant's personal responsibility.

WOODWORTH, J. was of the same opinion.

Judgment for the defendant.