### LENT IVES *v.* DENNIS HULET.

The defendant, being one of the overseers of the poor of the town of W.,
with the other overseers, contracted in behalf of the town, with the
plaintiff for the support of a poor person who had a settlement in
that town, but neglected to ·procure an order from a justice of the
peace for the allowance of any sum for the support of such per-
son, in pursuance of the 20th section of the statute relating to legal
settlements and providing for the poor, so as to render the town lia-
ble ;—Held, that the defendant was personally liable in an action of
assumpsit.

The non-joinder of the other overseers, in the action, cannot be taken
advantage of under the plea of *non-assumpsit.*

ASSUMPSIT, to recover of the defendant for the mainten-
ance and support of Patty Preston, a poor person belonging
to and resident in the town of Wallingford.

Plea, *non-assumpsit.* Issue to the country.

Upon the trial in the county court, the plaintiff introduced
John Ives, as a witness, who testified that Patty Preston, a
poor person, in indigent circumstances and belonging to the
town of Wallingford, was found, in May, 1834, in an out-
building of the plaintiff, apparently dead ; that shortly after-
wards, the defendant, *who was one of the selectmen and*

Rutlald,
February,
1840.

Ives
v.
Hulet.

*overseers of the poor of the town of Wallingford,* called upon the witness, who was then acting for and in behalf of the plaintiff, and said, it was impossible to remove her, (Patty) and wished her *to remain at the plaintiff's house and be taken care of,* saying, " *the town is able and shall pay the expense;*" that, afterwards, the witness saw the defendant and the other overseers, and urged them to remove the said Patty, but they objected, saying that the town had bargained with one Button to take charge of the poor, and they did not like to interfere, as it might prejudice their claim on Button; that they further said, " *there can be no mistake about it, you will have your pay.*" This witness further testified that he acted in behalf of the plaintiff in the premises, and that he never understood the defendant *as undertaking to become personally liable.* Henry Sherman, another witness, testified that he heard a conversation between the defendant and John Ives; that, in that conversation, the defendant said, " your father has sent for me to see about Patty," and that the defendant also said he wished the plaintiff to take care of her " *and the town will pay you, or we will see you paid.*"

Bishop, another witness, testified that the defendant came to the plaintiff's house and told the plaintiff to take good care of Patty, saying, " *the town is able and you shall have your pay.*" Weston, another witness, testified that he heard a conversation between John Ives and the defendant and the other overseers of the poor, in which Ives expressed his *anxiety and doubt about getting his pay for taking care of Patty,* and the defendant replied, " *give yourself no uneasiness, we will see that you have your pay.*"

Leonard, another witness, testified that Patty was removed from the plaintiff's house to the house of one Harris; that, just before her removal, the plaintiff requested the defendant and the other overseers, to become responsible to Harris, and they said, " *no, do as you think fit, and we will see that you have your pay.*"

It was admitted that the plaintiff, *heretofore, commenced a suit against the town of Wallingford, for the support of the said Patty, and failed to recover for the reason given in the report of that case, in the 8th vol. Vt. R.,* page 224, to which reference was made.

The county court decided that the defendant was liable to

pay the plaintiff for the support and maintenance of the said Patty, and so instructed the jury, who returned a verdict for the plaintiff, and the defendant excepted to the decision.

*E. L. Ormsbee*, for defendants.

*E. F. Hodges and E. N. Briggs*, for plaintiff.

The case shows a request from the defendant and an express undertaking to pay the plaintiff. The law will imply a promise to compensate, where services are rendered upon request. How does the defendant shield himself from this express undertaking or find relief from this legal implication?

The defence relied upon, is, that the defendant was acting as a public agent and did not bind himself individually.

The burthen of proof is on the defendant to show that he is *such* a public agent as the law will recognize, and that he contracted in such a manner as will entitle him to claim this technical relief.    13 Johns. 313.

I.    Is he such a public agent as the law will recognize in the suit against the town?

1. The court decided that the action of a majority of the overseers was not binding upon the town without an order from a justice, and that their acts were of no more weight than the acts of ordinary persons.

What is the defendant without such an order?

2. The overseer of the poor is not a public agent within the meaning of the law.

Hosmer J., in 3 Conn. R. 565, says, an agent is one acting in behalf of another. In whose behalf did this defendant act? Not of the town as the court have decided.

The neglect of the defendant to procure an order must make him principal, not agent.

II.    Did the defendant contract in such a manner as will entitle him to relief?

It is true that public agents, describing themselves as such, are not bound individually by their contracts. Yet, they may bind themselves by an express engagement.    2 Kent's Com. 632.

1. Is not this such an express undertaking as will bind the defendant? The whole testimony reported, shows an undoubted promise on the part of the defendant to pay the plaintiff.

The testimony of Ives as to his not understanding the

defendant to undertake to be personally responsible, should be laid out of the case, as it is but negative evidence.

The language used by the defendant, "we will see that you have your pay," "we will see you paid," with the fact that the overseers were scrupulously guarded in their expressions, on account of the situation of Button, makes a stronger case for the plaintiff than those reported as leading cases on this subject. *Sheffield* v. *Watson*, 3 Caines, 69. *Gill* v. *Brown*, 12 Johns. 386. *King* v. *Butler*, 15 Johns. 281. *Thomas et al.* v. *Bishop*,. 2 Stra. 955. *Horsley* v. *Bell*, 1 Bro. C. C. 101. *Burrill* v. *Jones*, 3 B. & A. 47, 5 C. L. R. 224. *Eaton* v. *Bell*, 5 B. & A. 34, 7 C. L. R. 14. *Lambert* v. *Knoff et al.*, 6 Dow. & Ryl. 122.   16 C. L. R. 256. *Parrott* v. *Eyre*, 10 Bing. 283, 25 C. L. R. 136.

2. All these cases went on the ground that the intention of the parties is to govern the construction of the contract. *Macbeath* v. *Haldemand*, 1 T. R. 172. *Unwin* v. *Wolseley*, 1 T. R. 676. *Olney* v. *Wickes*, 18 Johns. 122. *Hodgson* v. *Dexter*, 1 Pet. Cond. R. 331. *Hovey* v. *Magill*, 2 Conn. R. 680. *Adams* v. *Whittlesey*, 3 Conn. R. 560. *Perry* v. *Hyde*, 10 Conn. 329. In these cases, it was decided that the defendant was not liable ; but it was on the ground that he expressly contracted in behalf of the government, and the *onus propandi* was on him to show that he did so.

It must be shown that it was the intention of the plaintiff to credit the government alone, in order to bring the contract within the rule of the above cases. *Sheffield* v. *Watson*, 3 Caines' R. 69.

But going on the ground that the defendant did not personally undertake or intend to become liable ; is not he bound on the general principle that an agent is liable when he does not act within the scope of his authority and so as to give a remedy over against his principal. As it respects private agents, this rule is undeniable. 1 Swift's Dig. 330. 2 Kent's Com. 630. 12 Johns. R. 387. The same rule obtains as to public agents. *Lee* v. *Munroe*, 2 Pet. Cond. R. 531. 12 Johns. R. 387. 1 Pet. Cond. R. 332. 13 Johns. R. 76, 313. 3 Conn. R. 564.

Apply this principle to this case and we contend,

1. That the defendant had no authority to make the contract and was not acting in the line of his duty. 8 Vt. R. 224.

2. That the want of authority resulted from defendant's own neglect in not procuring an order from a justice of the peace. 15 Johns. R. 281.

III. If the court decide that the defendant is a public agent, we ask them to adopt this principle: that a public agent, not contracting in the line of his duty and by legal authority, but negligently, so as to give no remedy against his principal, is liable.

IV. The defendant is liable though the other overseers are not joined, as the non-joinder is a subject of abatement only.

The opinion of the court was delivered by

BENNETT, J.—Though this case is not without its difficulties, yet I am inclined to concur with a majority of the court in rendering judgment for the plaintiff. Two important questions arise for our consideration. Is the defendant liable upon the facts detailed in the bill of exceptions? And, if so, can he be charged in this general action? Though some of the evidence would tend to show an express and *personal* undertaking on the part of the defendant, yet, we are to decide the case upon the ground that the defendant did not pledge his personal responsibility by any express promise, and that the credit, in the contemplation of the parties, at the time, was given to the town. Otherwise, we must open the case again, that the jury may pass on that question. The pauper had her settlement in Wallingford. The defendant was an overseer of the poor of that town. The plaintiff has heretofore brought his action against the town and failed of a recovery, except for five dollars, because the defendant had neglected to make application to a justice of the peace for an order for the allowance of a sum requisite for the support of the pauper, in pursuance of the 20th section of the act relative to settlements and the support of the poor. See *Ives* v. *Wallingford*, 8 Vt. R. 224.. As a general rule, an officer of the government, acting as a public agent, is not personally liable for contracts made by him as such agent, in behalf the government, unless his personal liability is superadded in clear and explicit terms. That such public agent may bind himself, personally, no one will doubt, and it must always be a question of *intention*.

In the absence of express evidence, it is not to be pre-

RUTLAND,
February,
1840.

Ives
v.
Hulet.

sumed that a public agent intended to bind himself personally for the government, and the party who deals with him, as such agent, is justly supposed to rely upon the faith and ability of the government.  This is the doctrine of *Macbeath* v. *Haldimand*, 1 Term. R. 172, of *Unwin* v. *Wolseley*, 1 Term. R. 674, of *Hodgson* v. *Dexter*, 1 Cranch's R. 363, of *Gill* v. *Brown*, 12 Johns. R. 386, of *Walker* v. *Swartwout*, 12 Johns. R. 444, and of *Olney* v. *Wickes*, 18 Johns. R. 124 ; and, indeed, I think it is the result of all the cases on this subject, with the exception of *Sheffield* v. *Watson*, 3 Caines' R, 69, the soundness of which may well be questioned.  But, suppose a public agent does not act in the line of his duty and by legal authority, so as to bind the *faith* of of the government to the fulfilment of the contract, what is the result?  Does it follow that the agent is not personally responsible?  The cases of public agents have sometimes been considered as excepted cases from the general rule, but without much reason.  If the agent binds the *faith* of the government to the fulfillment of the contract, so as to give a remedy by petition, it is equivalent to giving a right of action, at law, against the principal, in the case of individuals or corporations.  It is not to be questioned but that the government will do ample justice in all cases where her *faith* is pledged.  In the case of *Macbeath* v. *Haldimand*, it was conceded that the plaintiff had a remedy, by petition, against the crown, and when Lord Mansfield, in that case, says, " the only question before the court is, whether the defendant be liable or not in this action, and if he be, the plaintiff must recover, and if not, no consideration respecting the plaintiff's remedy against any other person can induce the court to make him so," must be taken as applicable to the case then before the court and as having reference to a legal remedy. Ch. J. Marshall, in *Hodgson* v. *Dexter*, with his usual precicision, says, " where a public agent acts *in the line of his duty and by legal authority*, his contracts, made on account of the government, are public and not personal."  The rule has always been laid down with the same limitation, and I am not aware of a case in which it has been held that the agent was not personally liable, if he failed to bind the faith of the government.  No case of that kind has been present-

RUTLAND.
February,
1840.

Ives.
v.
Hulet

ed to our consideration, and what is said by judges in cases of public agents contracting in behalf of the government, in regard to their personal liability, must be taken with reference to the facts then before the court, and applicable to cases where the faith of the government is pledged. There can be no sound distinction between the case of an agent of an individual and an agent of the government, as to their liabilities. *Rathbone* v. *Budlong*, 15 Johns. R. 2. *Mott* v. *Hicks*, 1 Cowen, 513. *Adams* v. *Whittlesey*, 3 Conn. R. 566 ; and in the case of *Gill* v. *Brown*, 12 Johns. R. 387. Ch. J. Thompson, speaking of a public agent, says, if he means to incur no *personal* responsibility, he must act within the scope of his authority, so as to give a remedy against his principal. There may be this difference ; in the case of known public agents, the presumption is that their contracts are not personal, but in the behalf of the government ; while, in the other case, the presumption may be the reverse, unless the agent discloses his principal and professedly acts for and in his behalf. There is good ground for such a distinction ; but I believe there is none for a distinction as to their personal liability, where they fail to give a remedy against their principals, either by action or petition. It is a matter of little importance, but yet, I think this is not the case of a public agent, though the same rule would probably obtain as to the presumption that the contract of the overseer was made for and in behalf of the town, and not personally, as obtains in the case of public agents. A public agent is one that acts in behalf of the government or some department thereof, and who has no principal whom he can *legally* bind. Our towns are *quasi* corporations, for certain purposes, with certain rights, and subject to certain liabilities, and, among their duties, they are to provide for their own poor. It is the business of the overseers to take charge of them, and they are made the agents of the town, *quoad hoc*, and have full power to bind the town by all their contracts relative to that subject. It was, however, expressly made the duty of the overseer, when any person applied for relief, before he proceeded to grant it, beyond the sum of five dollars, to make application to a justice of the peace, who, in conjunction with the overseer, was to examine into the circumstances of the per-

son so applying, and if they found it a proper case for relief, it was the duty of the justice to give an order for the allowance of such sum as was thought necessary for the support of the pauper, and the overseer was restrained from making other or further allowance. The plaintiff supported the pauper, at the most urgent request of the defendant, under the fullest assurance that the town "was able and should pay the expense." The defendant, by his neglect of duty, failed to bind his principal, and shall he now be permitted to throw the loss upon the plaintiff? I think not. Neither is this unjust, as between these parties. The one or the other must be the sufferer. The plaintiff has been guilty of no neglect. It was not incumbent upon him to examine into the powers of the defendant to bind his principal. He had no reason to doubt of the liability of the town, and it would have been an act of supererogation in him to have required the credit of the defendant in aid of that of the town. I have said, the the defendant has failed to bind his principal from *his neglect,* and can there de a doubt of this? No person but the overseers could apply to a justice of the peace for the order, and it was made, by the statute, their duty to apply, and they, in conjunction with the justice, had a sort of judicial duty to perform, in determining whether the pauper should be relieved. Whether the defendant was sole overseer of the poor of the town, or one of several, matters not. If he had attempted to procure the order and had failed, from any cause whatever, his suppression of such a fact and his assuming to bind the town, the same as if the order had been procured would indeed have been a base fraud upon the plaintiff. The duties and the extent of the powers of the overseers of the poor are so clearly marked out in the 20th section of the act, that "he that runs may read." The plea of *ignorance of the law,* cannot avail the defendant. The well known maxim is, *ignorantia legis neminem excusat,* either for a breach or omission of duty; and this maxim is not only respected in courts of law, but is also the rule in equity. See 1 Story's Com. on Equity, 121, 155, and authorities there cited. The defendant was bound not only *to know his duty,* but *to do it.* Judge Story says, " every man of reasonable understanding, is presumed to know the law, and to act upon the rights which it confers or supports, when he knows all the facts, and it is *culpable neg-*

ligence to do an act, or make a contract, and then to set up his ignorance of law, as a defence ;" and in *Perkins* v. *Washington Insurance Company*, 4 Cowen, 659, it is held, that if an agent omit an act which he was bound to do, whereby a person dealing with him sustains loss, he is personally liable. There can be no pretence that the defendant acted under any mistake as to any facts affecting the extent of his powers. The plaintiff had a right to rely upon the acts of the defendant, and was in no way bound to ascertain or enquire whether application had been made to a justice of the peace for an order. There is no pretence in the case that the plaintiff had any knowledge that the requisite order had not been obtained. It is but reasonable that the defendant, assuming to give a legal remedy against the town, which proved ineffectual through his laches, should, out of his own means, make good the damages occasioned thereby. It is not necessary that the defendant should be chargeable with any fraudulent intent, in point of fact, to injure the plaintiff. Negligence of the rights of others is often the ground of liability, without any advantage to the person who is to be made responsible.

The doctrine, that a person who does an act in the name of another, without authority for that purpose, is personally responsible, is established by a great number of adjudged cases. If the agent intends not to incur personal liability, he *must see* that he gives a remedy against his principal. *Johnson* v. *Ogilby*, 3 P. Wms. R. 278. Fonb. Equity, 297. *Polhill* v. *Walter*, 3 Barn. & Adolp. 114. *Proctor* v. *Webber*, 1 D. Chip. 371.. *Dusenbury* v. *Ellis*, 3 Johns. Cas. 70. *Green et al.* v. *Beals et al.*, 2 Caines' R. 254. *Mauri* v. *Heffernan*, 13 Johns. R. 77. *White* v. *Skinner*, 13 Johns. R. 307. *Mott* v. *Hicks*, 1 Cowen's R. 536. *Meech* v. *Smith*, 7 Wend. R. 315. *Rossiter* v. *Rossiter*, 8 Wend. R. 494. *Long* v. *Colburn*, 11 Mass. R. 97. *Ballou* v. *Talbot*, 16 Mass. R. 461. *Grafton Bank* v. *Flanders*, 4 N. H. R. 239.

It is true, in the case now before the court, the agent acted upon a subject matter within the scope of his authority, but had not power to bind his principal, because of his omission to take a prerequisite step to clothe himself with such authority. It is the same thing, in effect, as if the agent had

RUTLAND.
February,
1840.

Ives
v.
Hulet.

acted upon a subject matter beyond the line of his duty. In *Meech* v. *Smith*, 7 Wend. 315, it is expressly held that an agent renders himself personally liable when he contracts upon terms which he knows he has no authority to agree to, although the contract be made in the line of his business, as agent. The case of *King* v. *Butler*, 15 Johns. R. 281, is like the present. It came before the court upon a writ of error from the decision of the common pleas, directing that the plaintiff become nonsuit. Butler was one of the overseers of the poor of Ulysses, and requested the plaintiff to provide all things necessary for a pauper, and said, " I will see you paid." The plaintiff made out his account against the county and the board of supervisors refused to audit it, because an order had not been obtained for the relief of the pauper, under the provisions of the statute law of that state, similar, in effect, to the 20th section of our statute. It was held that the overseer was personally responsible. The decision of the court seems to be put on two grounds; first, on the ground of a personal undertaking, and, second, on the ground of neglect in the defendant to procure the order, so as to charge the town. It is true that either the one or the other ground might have been sufficient upon which to have recovered the judgment, and the case must be regarded as much an authority upon the latter point, as upon the former. Indeed, I think the case, in the main, rests upon the latter. The evidence of there being an express personal undertaking, is, indeed, not very satisfactory. It consists in the declaration, " I will see you paid." But it is to be remembered that the defendant was called upon, as one of the overseers of the poor of the town, to visit the pauper, by the plaintiff; that the plaintiff presented his account to the supervisors against the county, and the presumption is that the defendant was understood to be acting only in his official capacity, and that he is not to be charged, personally, without the most clear and decisive proof that such was the intention. In the case of *Olney* v. *Wickes*, 18 Johns. R. 126, Platt, J., who gives the opinion of the court, with much good sense, says, " I cannot admit that an express promise to pay, by the contractor, forms the criterion of personal responsibility. Where the *res gesta* and the attending circumstances show the contract to be on public account, it is not necessary, in

order to screen him from personal responsibility, that the contractor should expressly say, *I contract as overseer of the poor.*" The question, in all such cases, will be, to whom was the credit given? 18 Johns. 126. 1 Mass. R. 208. Platt, J., speaking of the case of *King* v. *Butler*, says : " one ground of the decision in that case, was, that the officer had neglected his duty in not obtaining the order of the justice," and it appears to me to be the most satisfactory ground. In that case, it is said, " the duty of obtaining the order is imposed upon the overseer, and not upon the person furnishing relief, and is the authority of the overseer for ordering it."

If he neglects to procure such order, it is his own fault, or negligence, and is not chargeable upon the plaintiff. Though the case of *King* v. *Buttler* is what may be termed a *per curium* opinion, and given without argument, yet, the court was of great respectibility, and I think the latter ground of the opinion, at least, commends itself for its good sense.

The case of *Olney* v. *Wickes* is in no way opposed to it. In that case, the paupers had been removed from S. under an order of the justices of that place, to S. in the county of Rensselaer, and, with the order, were left with the defendant, an overseer of the poor of the latter place, who received them. The plaintiff was hired to keep the paupers by the defendant, and the only point in the case, was, whether the defendant had made a personal undertaking to pay the plaintiff. No question was made as to the power of the overseer to bind his principal, this not being a case, as I understand it, in which an order was necessary, and the case turned solely on the effect of the evidence to show the undertaking a *personal one*, as being superadded to the responsibily of the principal. The case of *Bowen* v. *Morris*, in error, 2 Taunton, 374, was assumpsit. Morris, the plaintiff below, was mayor of a borough, acting as agent of the corporation, and, upon the sale of certain real estate of the corporation, at auction, subject to certain conditions, Bowen, and Morris, the mayor of the corporation, on the behalf of himself and the rest of the burgesses and commonality of the borough, the vendors of the premises, mutually agreed to perform and fulfil, on each of their parts, respectively, the conditions of the sale. The contract was signed by Bowen and T. Morris,

RUTLALD,
February,
1840.

Ives
v.
Hulet.

mayor. The only point decided in that case, was, that this contract was not made personally with Morris and that no action could be maintained on it, in his name. This was the only point before the court. In the report of the case, Mansfield, Ch. J. is reported to have said, " that this contract did not bind the defendant, personally, because he did not contract on behalf of himself, personally ; that he acted merely as an agent." This, no doubt, is a sound general position ; but the reporter makes the judge further say, " and although the corporation had not constituted the mayor their bailiff, or agent, by instrument under seal, so that he was not competent, by that contract, to bind the corporation, yet, as the plaintiff in error signed it, perhaps the corporation might have sustained an action on this contract." I do not understand the judge to say that Morris would not be personally liable to Bowen, if he failed to bind the corporation, but he says, hypothetically perhaps, as the contract is signed by Bowen, the corporation might have sustained an action upon it, though not bound by it themselves. That this is all that is meant by the judge is apparent from the next sentence, in which he says, " in equity, a contract, signed by one party, would be enforced, and it was not clear that it was different at law." During the argument of the case, by Abbott, Mansfield, Ch. J. is reported to have said " supposing he (Morris) had made this contract without authority, could not the buyer maintain an action against him?" to which the counsel replied, " yes, *ex delicto*." In this case the corporation, by their vote, had confirmed this and the other contracts signed by Thomas Morris, on behalf of the corporation, and directed them to be carried into execution. Had the question then been as to the liability of the corporation, there could have been no doubt upon it. Though this may have been thought to have a strong bearing upon the case before us, still I cannot consider it an authority opposed to the views of the majority of the court.

In the case of *Chency et al.* v. *Clark*, 3 Vt. R. 431, in error, the plaintiff's in error were a committee appointed by a voluntary association to superintend the building of a meeting house, to be paid for out of the avails of a subscription payable to the committee. The plaintiff and defendants

were all members of the same association and equally interested, with others, in building the house.

In that case it was held, the committee were not personally liable to Clark for work done on the house, at their request, in the absence of any express undertaking on their part. The parties, in that case, and the other subscribers were all jointly interested in the undertaking, and are to be treated as partners *quoad hoc,* and, for this reason, it might well be said that Clark could not maintain his action, at law, against the committee, or any other of the subscribers. It by no means follows that the committee would not have been liable, had not the plaintiff been a member of the association. In *Horsley* v. *Bell,* reported in a note in 1 Brown's C. R. 101, and also in Ambler's R. 770, the commissioners, appointed under an act of Parliament to render navigable a certain stream, were held personally liable to the plaintiff for work done in the prosecution of the scheme, under their direction, though there was no express personal undertaking. So in the case of *Cullen* v. *the Duke of Queensbury et al.* 1 Brown C. R. 101, the defendants were a committee of a voluntary society, and it was held they were *personally* liable for expenses incured by the plaintiff, for the use of the society, under an agreement made with him in behalf of the whole association, and that it was not necessary to make the other subscribers parties to the bill. The decree was affirmed in the House of Lords.

It can constitute no objection to a recovery, in this case, against the overseer, because he bound his principal to the amount of five dollars. He is liable for the residue on account of his neglect to bind his principal for the whole, and is precluded from avering any thing to defeat this form of action.

In *Feeter* v. *Heath,* 11 Wend. 477, it was held that an agent was personally liable, under a contract, unauthorized by his principal, for the whole account due upon it and that the party with whom he contracted was not bound to look to the principal for so much of the contract as the agent was authorized to make, but might hold the agent responsible to the full amount of it. I think, then, upon principle and authority, that the defendant should be held personally liable.

The remaining enquiry is, can he be charged in this gene-

ral action of assumpsit, or should the plaintiff have resorted to a special action on the case, *ex delicto?* I have no doubt such special action might have been maintained, and perhaps it might have been the preferable action, as the plaintiff would, probably, have been entitled to have recovered, in such action, in addition to his account, such costs as he was reasonably put to in prosecuting his suit against the town. This however, is a point not before the court.

It is said, it is the business of courts of justice to discover the meaning of contracts and then compel their execution accordingly, and that, in this case, the position being established that the credit was originally given to the town, the court cannot, because it has been ascertained that the contract has no legal validity, according to its true meaning, suppose it to have a meaning which the parties never intended, for the sake of giving a remedy to the plaintiff. Though this objection is specious, yet, I think it is not sound, as applied to the facts of this case. Persons standing *en autre droit*, and contracting in such right, are, generally, *personally* liable in cases in which they have no responsible principal to be resorted to. *Horseley* v. *Bell*, 1 Brown C. R. 101, in notes. *Thatcher* v. *Dinsmore*, 5 Mass. R. 299. *Forster* v. *Fuller*. 6 Mass. R. 58. *Sumner* v. *Williams*, 8 Mass. R. 161. In *Forster* v. *Fuller*, the defendant, in the body of the note, *promised as guardian*, and also subscribed it *as such.* In *Sumner* v. *Williams et al.* the defendants, *as administrators*, upon the sale of the real estate of their intestate for the payment of debts, covenanted " *in their official capacity,*" and yet they were held personally liable on the contracts. It is quite clear the defendants did not, at the time they made these contracts, *intend* to be *personally* bound by them, and, indeed, Parker, J. in the latter case, distinctly admits, that this was not the understanding of the parties at the time. The principles of these cases have been regarded as sound law in this state. There are instances in which the law raises a promise from the *acts* of the party, and will not admit evidence of his intention to commit a tort, *in disavowal* of *such tacit promise.* There is " *a sort of moral estoppel*" applied in such cases, founded upon the legal maxim," *that no one can take advantage of his own wrong.*"

Trover may be converted into an action for money had and received, to recover such sum as may have been produced upon the sale of the goods ; and, in *Hill* v. *Davis*, 3 N. H. R. 386, it was even held, where goods had been wrongfully taken, that assumpsit would lie as for goods sold and delivered at the request of the defendant. So if a person seduces away and harbors the servant of another, the master may waive the tort and sue in assumpsit for the work and labor of the servant. *Lightly* v. *Clouston*, 1 Taunt. R. 112. *Foster* v. *Stewart*, 3 M. & S. R. 191. So if one person, by fraud, induce another to sell goods to an insolvent person, and he afterwards obtains the goods for his own benefit, it has been held that assumpsit will lie against him to recover their value. *Hill* v. *Perrott*, 3 Taunt. R. 274. So in *Biddle* v. *Levy*, 1 Stark. R. 20, where the plaintiff had sold goods to the minor son of the defendant, upon the fraudulent representation of the father, who took the goods into his own possession, it was held that the action for goods sold and delivered well lay against the father. In none of these cases is there a credit, in fact, given to the defendants, or a promise, on their part, to pay ; but it was held that the law, from the circumstances of the cases, would imply contracts to pay the master for the labour of his servant, and the owner for his goods.

The defendants could not be permitted to avoid the effect of the principle, by setting up *tortious acts* in themselves. In the case of *Polhill* v. *Walter*, 3 Barn. & Adolp. 114, the defendant was sued in an action on the case for a deceit. It appeared that a bill was presented at the office of the drawee, when he was absent from home, for acceptance. The defendant, who lived in the same house with the drawee, being assured by one of the payees that the bill was perfectly regular, was induced to write upon the bill an acceptance, as by the procuration of the drawee, believing that the acceptance would be sanctioned and the bill paid by the latter. The bill, however, was dishonored when due, and the plaintiff, who was an indorsee of the bill, sued the defendant for falsely, fraudulently and deceitfully representing that he was authorized to accept the bill by procuration.

The jury, by their verdict, negatived all fraud in fact, and yet it was held that the defendant was liable. If, said lord

Tenterden, Ch. J. " the defendant, when he wrote the acceptance, and thereby, *in substance*, represented that he, had authority from the drawee to make it, knew that he had no such authority, the representation was untrue, to his knowledge, and we think the action will lie against him by the plaintiff for the damage sustained in consequence thereof." See also *Foster* v. *Charles*, 6 Bing. Rep. 396. 7 Bing. Rep. 105.

These cases fairly sustain the position, that if a party represents what he knows to be untrue, and which is *calculated*, from the mode in which it is made, to induce another to act on the faith of it, so that he may and does incur damage, though there be no *fraud in fact*, it is a fraud in law and the action well lies.

In the case under consideration, the defendant, in substance, represented to the plaintiff that he was not only overseer of the poor, but that he had authority to bind the town for the support of this particular pauper, which was untrue. The defendant must have known that he had procured no order from a justice for the allowance of any sum for the support of this pauper, and he was bound to know, that without such order, he had no authority to contract in behalf of the town for her support.

The plaintiff was induced to act, relying upon this representation, and in so doing he has sustained damage. Upon the authority of *Polhill* v. *Walter*, this was a false, deceitful and fradulent representation in law, though no fraud existed *in fact*, and the plaintiff might have declared in the same form of action. The present form of action, however, is more beneficial to the defendant. He has no reason to complain and cannot be permitted to defeat it by alleging that the plaintiff was induced to rely upon his false representation and give the credit to the town. I am aware that it is said, in *Long* v. *Colburn*, 11 Mass. R. 97, that if Colburn had not authority to sign the note for his principal, a special action on the case might make him answerable ; and in *Ballou* v. *Talbot*, 16 Mass. 461, there is an express adjudication that an action will not lie on the note, against the agent, who made the note without authority from his principal, and that it must be a special action, *ex delicto*, on the case. In

*Polhill* v. *Walter* , it is also held that the defendant could not be charged as acceptor of the bill. " It is enough," the court say, " that no one can be liable, as acceptor, but the person to whom the bill is addressed, unless he be an acceptor for honor, which the defendant was not." The court say, it is that which distinguishes *that case* from the one of a pretended agent making a promissory note, or *purchasing goods in the name of a supposed principal.* Though it should be admitted that there may be some difficulty in maintaing an action against the agent, who shall make a note, or accept a bill of exchange, in the name of and for his supposed principal, upon the instruments themselves, yet, when the action is a general one, as for moneys paid or services perfomed at the request of such pretended agent, all difficulties vanish. In *Freeman* v. *Otis,* 9 Mass. Rep. 272, the defendant had contracted, *as agent for the government,* with the plaintiff, but having by his interference prevented the remedy against the government, he was held personally responsible in a general action of *assumpsit.* In the case of the *Grafton Bank* v. *Flanders,* 4 N. H. R. the action was on the note against the pretended agent, who made it in the name of his supposed principal, but without authority, and it was held well to lic. So in *Dusenbury* v. *Ellis,* 3 Johns. Cas. 70, the action was on the note against the attorney, who executed it in the name of his supposed principal "by his attorney," and, on objection, the suit was held to have been well brought. The case of *White* v. *Skinner,* 13 Johns. R. was covenant, and the defendant and others were set up, in the covenant, as the directors of the Granville Cotton Manufacturing Company, on the one part, and it was signed thus ; " For the directors, Reuben Skinner, L. S."

In that case, it was held that a person who executes a bond, or covenant, as attorney for another, without authority, is personally liable on the instrument the same as if he had covenanted in his own name. In the case of *Rossiter* v. *Rossiter,* 8 Cowen's R. the defendant was held personally liable, in assumpsit, upon a note signed by him as attorney for another, without authority. In that case, however, no question was made as to the form of action. The principle

of law is well settled, that, if one partner of a firm makes a deed or covenant for and in the name of the firm, though the credit was given to the firm, and the intention of the parties was to bind the firm, yet, it is only the deed or covenant of the individual partner and not of the company.

The case most opposed to this view, which has fallen under my observation, is *Perry et al.* v. *Hyde et al.*, 10 Conn. R. 329. The defendants, in that case, had been appointed, by the county court, upon the complaint of the state's attorney of the county, a committee to build a bridge for the town of F., and contracted, in their official capacity, and *under* and *by virtue of their appointment*, with the plaintiffs to build the bridge, stipulating that the plaintiffs should be entitled to a certain sum as a full compensation for the same, to be collected of the town of F., and paid in such way as the county court should direct, without any expense to the committee. It seems the bridge was built, and the plaintiffs presented their account to the county court which was allowed and execution was ordered against the town for the amount. The judgment of the county court, appointing the committee, was subsequently reversed, upon the ground that the state's attorney had no power to prefer such complaint, and the proceedings of the county court thereon were held to be erroneous. In an action of assumpsit, brought against the committee for the building of the bridge, it was held they were not personally responsible. But it may be remarked, in that case, the committee held their appointment under the judgment of a court of competent jurisdiction, both as to the person and subject matter of the proceedings, which was in full force until reversed. The authority was publicly given, and the process equally within the knowledge of both parties. The committee were not party or privy to the proceedings, and were not bound to exercise a better skill and judgment, with respect to their legality, than the plaintiffs themselves. They could not be chargeable with any *fraud* or *neglect of duty*; and *in this* consists the material distinction between that case and the one now under consideration. The parties had equal equities, and, besides, the committee expressly contracted in their official capacity, *and under and by virtue of their appointment*, and that the bridge should be built "without any expense to them or either of them."

It would, then, indeed, under such a state of facts, have been highly unjust to have made the defendants responsible for the consequences resulting from a mistake of a court of general jurisdiction.

The non-joinder of the other overseers cannot avail the defendant, in this case, under the general issue.

Though it is with diffidence that I come to a different result from the learned chief justice of this court, and one of my other brethren, on a former argument of this cause; yet, from the best examination which my time would allow me to give to the subject, I cannot bring my mind to the same conclusion , and I therefore concur with a majority of the court now present in believing that the plaintiff is entitled to recover, and that, too, in this form of action.

The judgment of the county court is therefore affirmed.

WILLIAMS, Ch. J. dissenting.—I cannot agree to affirm the judgment of the county court. The evidence is detailed in the bills of exceptions. The action was assumpsit. The court, on the evidence, directed a verdict for the plaintiff. Of course, it must have been on the ground, that, taking all the testimony to be true, the plaintiff was legally entitled to a verdict. The ground of my dissent, is, that the defendant is not liable in this action, on the evidence, from any principle of law imperative in the case. If it was mutually understood, between the plaintiff and defendant, that the contract was made by the defendant as an overseer of the poor of the town, and the services performed by the plaintiff and the articles furnished for the pauper were on the credit of the town, the plaintiff cannot recover, unless the defendant made himself personally liable. I shall assume that the credit was not given to the defendant, on his promise, because no such fact is found by the jury, and because that was a question to be submitted to the jury, and neither the county court nor this court are authorized to determine a question of fact, especially where there is conflicting testimony. Upon the whole testimony of the case, particularly that of Ives, the son of the plaintiff, and the fact that the plaintiff has brought a suit against the town of Wallingford for the whole amount he claims here, I should infer that it was not understood the defendant was to be personally responsible; that there was no express promise on which the plain-

tiff relied, and that the credit was actually given to the town and not to the defendant. On this part of the case, however, it is sufficient to say that it was a question to be submitted to the jury, and if the court, from the testimony, decided on this as a matter of fact, their decision was manifestly erroneous, and the judgment should be reversed. That the question should have been left to the jury, I infer from the case of *Eaton* v. *Bell,* 5 B. & A. 34 ; *Macbeath* v. *Haldimand,* 1 Term.R. 172; as well as from the principle that questions of intention, and to whom credit is given, and whether a promise was made, are to be submitted to a jury, being questions of fact and not of law.

That the defendant was not personally liable, if he acted and was understood to act as agent of the town, appears to me to be a principle well established. The leading case, on this subject, is *Macbeath* v. *Haldimand,* found in 1 Term. R. 172. The opinion of Justice Ashurst, in that case, which was said to be entitled to the most unreserved respect, by Judge Spencer, in the case of *Walker* v. *Swartwout,* 12 Johns. R. 444, was, that " a person, acting in the capacity of " an agent, may undoubtedly contract in such a manner as to " make himself personally liable, and that brings it to the " true question here, namely, whether, from any thing which " passed between the parties, at the time, it was understood " by them that the plaintiff was to rely upon the personal se- " curity of the defendant." In that case, as the evidence was wholly in writing, it was thought by the court that the import of those writings was matter of law and not of fact. This case has been followed in this country by that of *Hodgson* v. *Dexter,* 1 Cranch, 345, *Walker* v. *Swartwout,* above mentioned, and in some of the other states. In the case of *Bowen* v. *Morris,* 2 Taunt. 374, it was considered that the principle which governed the case of *Macbeath* v. *Haldimand,* applied to a mayor of a borough, acting as agent for the corporation. The decision of the court, in that case, is very pertinent to the one before us. They decided that the "contract did not bind the mayor, personally, because he did not contract in behalf of himself, personally ; that he acted merely as agent," even though the corporation had not constituted him their agent, under seal, so that he was not competent, by that contract, to bind the corporation. And in the case of *Olney* v. *Wickes,* 18 Johns.

122, it was considered that the same principle governed the case of contracts made by an overseer of the poor for the maintenance of a pauper, and the overseer was placed on the same ground as a public agent or officer, and when he acts ostensibly in the line of his official duty, his contracts are public, and not personal, and I apprehend the remark of justice Platt well founded, that an express promise to pay does not form the criterion or the sole criterion of personal responsibility, but that it depends upon the character in which he acts, whether as a public agent or a private person. It appears to me, therefore, that this action cannot be maintained against the defendant, unless it was understood between the plaintiff and defendant that he was to be personall liable, which certainly was not the case. The action is, however, attempted to be supported on the ground that if the defendant was agent, he went beyond the scope of his authority and did not bind his principal, and, therefore, was personally liable. In the first place, it is to be remembered that the defendant was acting within the scope of his authority and did bind the town to a certain extent. On the very contract here relied on, the present plaintiff sued the town of Wallingford and recovered to the amount of five dollars, and the recovery was sanctioned by this court, at their January term, 1837. In the second place, I do not assent to the proposition that an agent is liable where there is no right of action against the principal. In the cases of *Macbeath* v. *Haldimand, Hodgson* v. *Dexter,* and *Walker* v. *Swartwout,* there was no legal remedy against the persons in whose behalf they contracted, and the principal is general, that, when a man " acts for the public and treats with another in that capacity, there is no pretence to say that he is personally liable." This was the remark of Buller, J., in the case of *Macbeath* v. *Haldimand.* In the case of *Cheney et al.* v. *Clark,* 3 Vt. 431, where the building committee of an association for building a meeting house employed a person to labor for them in building a meeting house, they were held not responsible, because it did not appear they had pledged their individual credit and responsibility, or made an express promise, although it was a case where they could not bind the association, and there was no responsible principal who could, in any event, be made accountable. It is true, this seems to

RUTLAND,
February,
1840.

Ives
v.
Hulet.

be at variance with the case of *Horsely* v. *Bell*, Ambler, 769, but,in the case before us, there is a principal for whose benefit the services were performed by the plaintiff. The ground on which the plaintiff failed to recover the whole amount of his claim of the town, was, that the overseers of the poor could not make a contract, obligatory on the town, for a greater sum than five dollars, without an order from a justice of the peace. The case is reported.8 Vt. R. 224. It is now claimed that the defendant should be liable, because it was *his* duty to procure the order from a justice of the peace, and the case of *King* v. *Butler*, 15 Johns. 281, is relied on. To this position I cannot assent, for the following reasons:

1. It does not appear, in this case, that the defendant was guilty of any neglect. He was but one of three overseers, and, for any thing appearing,he might have been controlled by the others.

2. The form of the action does not admit of this inquiry. The action is assumpsit. The inquiry is, whether there is a contract. If the defendant were to be made liable for this neglect, it should have been in an action *ex delicto*, and,

3. The extent of the powers of the overseers of the poor, was as well known to the plaintiff as to the defendant, and unless the defendant was guilty of some fraud or misrepresentation, as to obtaining the order, and if there was a mutual ignorance of the requirements of the law, I can see no reason why the effects of this mutual mistake should be transferred from the plaintiff to the defendant. If the plaintiff had any doubts as to the liability of the town, he should have required an express undertaking from the defendant to be personally responsible, in which case, we all agree, the action might have been maintained.

Of the case of *King* v. *Butler*, I have to remark, that, if it lays down any principles which render this defendant liable, personally, I could not assent to it, as an authority. It was decided without argument, and it does not appear which of the learned judges of that court delivered the opinion. It was what is termed a *per curiam* case. The decisions which are found in Johnson's Reports have always come to us with a weight of authority to which the learning, talents and exalted legal character of the learned justices, who composed

the court, so justly entitle them, and, in general, when a subject appears to have been thoroughly investigated by that court, I rest satisfied that they have come to a right conclusion. If the case of *King* v. *Butler* were of that character, and decided the same question now presented, I should have dissented with some hesitation. That case came before the court on a bill of exceptions to a decision of the court below, ordering a nonsuit. That case was assumpsit, and the defendant was an overseer of the poor, and the court decided, only, that an overseer was liable on his express promise to be personally accountable. The court say, " the proof in the court below showed a most *explicit and positive request*, by the defendant to the plaintiff, to maintain the pauper, and an *express* and *absolute promise* to pay." If this was the view of the court, it was sufficient to decide the case and all the after observations were uncalled for and may be considered as extrajudicial. At any rate, they do not appear to me to be well founded. But, moreover, it appears to me that that case was, in effect, overruled by the case of *Olney* v. *Wickes*, 18 Johnson. In speaking of the case of *King* v. *Butler*, Platt, J., who delivered the opinion of the court, says, that the contract in that case was in the nature of a special guaranty, and Spencer, Ch. J., who dissented, says, " we held, in *King* v. *Butler*, that the overseer was liable to a suit when he had requested the plaintiff to maintain a pauper, and *made an express and absolute promise to pay him for the same*," and he thought, in that case, the proof was positive that the defendant, Wickes, did make such promise and that the plaintiff relied on his personal responsibility; for that reason alone he dissented. All appeared to agree that the case was to be governed by the decision of the question, whether the defendant contracted as an agent of the town, or in his private capacity, the majority holding that the idea of personal responsibility was repelled by the circumstances of the case, and the judges who dissented, that the reliance of the plaintiff was on the personal responsibility of the defendant. In the present case, had the question been submitted to the jury and they had found that Hulet, the defendant, made a special guaranty, or an express promise and on his personal responsibility, upon which the plaintiff relied, I should have

acquiesced, however strong might have been my conviction that they made an erroneous conclusion, from the testimony.

Again, I cannot readily see how on one contract, made at the same time and by the same words, by this defendant, he should be treated as an agent of the town and render them 'liable for a part of the money advanced, &c., and as contracting on his own responsibility and making himself personally liable for the residue. In other words, how one entire contract should be the contract of the town, to the amount of five dollars, and the contract of the defendant for the residue.

On a consideration of the whole case, it appears to me that it should have been left to the jury to determine whether the defendant made any promise on which the plaintiff did rely as making him liable in his individual character ; that, from the evidence, as detailed, it is apparent that both con_sidered the contract as made for and in behalf of the town, and that it was a mutual mistake as to the powers of the overseers to bind the town ; that there was no concealment or misrepresentation of the defendant as to the extent of his authority ; that it is not an action, *ex delicto*, in which it would be proper to enquire whether the defendant was guilty of any neglect or misfeasance in not procuring an order ; that there is no evidence that he was thus guilty ; that the contract was the contract of the town, and so treated by the plaintiff, and so considered by this court, as to the sum of five dollars, part of the sums advanced by the defendant. For these reasons, I think the judgment of the county court should be reversed. In this opinion, Judge Redfield, who was here at the last term and heard the argument, concurs with me.