EPHRAIM PADDOCK v. MOSES KITTREDGE.

*Principal and agent. Mutual mistake. Assumpsit.*

A school district, anticipating a suit against itself for collecting a tax of one who claimed he was not taxable in that district, by vote appointed the defendant agent to defend any suit the objecting tax payer might bring against the district. The suit was not brought against the district, but against the defendant, as the lister who designated the tax payer's list as in that district. The defendant, however, supposing himself authorized by said vote of the district to do so, employed the plaintiff as attorney in such suit, who rendered valuable services therein and it finally resulted in the success of the defendant, who recovered a bill of costs. The plaintiff also supposed that the defendant was authorized by the district to employ him and charged his services in that suit to the district. Both the plaintiff and the defendant attended the meeting where the above mentioned vote was passed, and had equal means of knowing the extent of the defendant's authority. The plaintiff sought to recover his account from the district, but was defeated on the ground that the defendant was not authorized by the district to defend the suit against him. The plaintiff then brought *assumpsit* against the defendant to recover both his charges as attorney in the suit against the defendant as lister, and also his costs in the suit brought by him against the district: *Held*, that he was entitled to recover the former, but not the latter.

ASSUMPSIT. The case was referred, and the referees reported as follows:

" The plaintiiff presented an account amounting to seven hundred eighty-six dollars and sixty cents, ($786.60), and the defendant presented an account in offset amounting to six hundred and twenty dollars and ninety-two cents, ($620.92). The only controversy between the parties was in regard to two items of the plaintiff's account, which were as follows:

To amount charged School District No 2, in suit Fairbanks & Co. v. you and another,  } $81.56

To cost in suit E. Paddock v. School District No. 2.  } $105.49

The following is the history of these items: In 1849 or 1850, defendant and one Charles Stark, two of the then acting listers of of the town of St. Johnsbury, saw fit, in good faith, to set one fourth part of the personal property of the firm of E. & T. Fairbanks & Co., mainly located in School District No. 1, in said town, to the list of J. P. Fairbanks, one of the four members of that firm, who resided in School District No. 2. A tax

Paddock v. Kittredge.

was raised on this list in School District No. 2 against J. P. Fairbanks, which he declined to pay, on the ground that the listers had no power to put such company property in that district to him. In a short time the matter assumed considerable importance, provoked a good deal of discussion and probably excited considerable feeling among those interested. It led to a school meeting at which the expression of opinion was very strong if not unanimous, in favor of enforcing by legal means the collection of the tax. Both the plaintiff and the defendant were present at this meeting. The collector was instructed to collect it and did so. The district by vote appointed the defendant their agent to defend any suit Fairbanks might bring against the district, though it was undoubtedly understood at the time by the plaintiff, the defendant and others, not in a restrictive sense, but as embracing any litigation growing out of the collection of the tax under the disposition of property made by the listers. It was supposed by some that the suit would be brought against the prudential committee, collector or district, and, perhaps no one foresaw that it would be commenced against the listers, though the plaintiff advised the meeting that in his opinion, the tax bill and warrant would afford a good justification to the collector, and that the suit might perhaps be brought against the listers. The plaintiff resided in district No. 2, was consulted and talked with by its members, and by the defendant, and was regarded by all as their attorney, and took active measures for the defence of the anticipated suit.

The suit was not commenced for several months, and then it was brought against the listers. The plaintiff and the defendant then talked about it, and the plaintiff made such preparations as he thought needful, fully believing he was employed by the defendant as agent for the district. He managed the case through all the courts, bestowing great care and labor upon it, being sole counsellor throughout.

For the points made and the decision of the case, the court is referred to the reported case, in 24 Vt. 9.

The plaintiff charged his services to district No. 2 and they are reasonable in amount. The plaintiff and the defendant had frequent interviews during the progress of the trial and the

plaintiff submitted his brief to the defendant, and the latter then suggested the "no damage point," which eventually seemed to have weight in the case.

The truth is, without doubt, that at the time the plaintiff, the defendant, both as an individual and member of the district and as their agent, and others feeling an interest, all worked together harmoniously and zealously in defeating that suit, expecting the district was legally liable to "foot the bill" and would willingly do so.

The plaintiff, after the determination of the foregoing suit, presented his bill for services, amounting to eighty-one dollars and sixty-five cents, to the district for payment. The district declined to pay. He sued them, was defeated on trial in the county court, and now claims the same of the defendant. It was never charged to the defendant on the plaintiffs books, nor does it appear to have been demanded or directly claimed of the defendant till the commencement of this suit, but the plaintiff had previously said to Mr. Slade that he had not charged it to the defendant, and that he should never ask him for it. The plaintiff clearly acted under an employment by the defendant as the agent of the district, to defend any suit that might grow out of the collection of the tax, and the defendant says that the plaintiff was the lawyer of the district, and that he supposed the district would pay the plaintiff as well as himself.

In March, 1857, the town of St. Johnsbury voted to pay the plaintiff this item of eighty-one dollars sixty-five cents, not however, at the request of either of the parties, and an order was drawn payable to the plaintiff or bearer for that amount. The order and money was offered to the plaintiff by the defendant, but he refused to take either, and the defendant, having drawn the money on the order, holds it for the plaintiff whenever he chooses to receive it.

The item of one hundred and five dollars and forty-nine cents, grows out of the former one as follows:

When the district declined to pay him his services in the Fairbanks suit, the plaintiff brought an action against them therefor. The district tendered him twelve dollars for retainer and services rendered before the commencement of the Fairbanks suit. This

the plaintiff at first declined to accept, but afterwards, on the termination of his suit, he did accept it from the clerk and gave credit in account for that sum. Against the remainder of the plaintiff's bill for services the district defended, on the ground that the defendant was not such an agent under the recorded vote as could bind the district in employing counsel to defend against Messrs. Fairbanks in their suit against the listers. This defence, under the proofs and opinion of Judge PECK in the county court, was successful, and the plaintiff, acting with the advice of counsel, did not deem it advisable to carry the case further on exceptions. This item consists of counsel fees, services, expenses and costs of this suit, which we find to be proper in themselves, and reasonable in amount. Like the other item it has never been charged to the defendant or claimed of him till this suit was commenced.

We find these items to be reasonable and just, and are of the opinion that they ought to be allowed to the plaintiff, if, in the opinion of the court, the defendant is legally bound, under the foregoing facts, to pay them.

If these items should be allowed by the court we find that the plaintiff should recover of the defendant one hundred sixty-five dollars and sixty-eight cents ; and if they should not be allowed we find that the defendant recover of the plaintiff twenty-one dollars and forty-six cents."

Upon this report the county court at the December Term, 1857, of the Caledonia County Court,—POLAND, J., presiding,—decided that the plaintiff was not entitled to recover for the two items in dispute and rendered judgment for the defendant for twenty-one dollars and forty-six cents and his costs, to which the plaintiff excepted.

The plaintiff, *pro se*, with whom was *T. Bartlett*.

*J. D. Stoddard*, for the defendant.

ALDIS, J. The defendant, supposing himself to be authorized as the agent of School District No. 2, in St. Johnsbury, retained the plaintiff to defend a suit brought by Fairbanks & Co., against

the defendant and one Starks. The plaintiff also supposed that
the defendant was authorized to employ him on behalf of the
district, and accordingly charged his services in the suit directly
to the district and not to the defendant. In fact the defendant
was not so authorized; the vote ·of the district extending his
authority only to suits brought *against the district*, whilst *this* suit
was brought against the defendant and another as listers. For
some time before the suit was brought, it was supposed that it
would be brought against the school district, and upon that expec-
tation the district passed the vote. When commenced against
the listers, it was supposed to involve the same cause of action
against which the district had voted to defend, and to be within
the terms of the vote, and hence arose the mistake by which it
was defended by the defendant and the plaintiff, as they supposed
on behalf of the district. The defence was successful—the
defendants obtaining a judgment for their costs.

The case is reported in 24 Vt. p. 9, and is referred to as a
part of the case. Both the plaintiff and defendant appear to
have been under a mutual mistake as to the defendant's authority.
Both, as the case finds, were at the meeting when the vote passed,
and had equal means of knowing the extent of the defendant's
authority.

The suit being ended the plaintiff presented his account to the
district for payment. They refused to pay it. He sued them
and was defeated, upon the ground the defendant had no author-
ity by the vote to retain him.

The first controverted item of the account is for the plaintiff's
services in the suit *Fairbanks & Co.* v, *the defendant and Starks.*
The plaintiff claims this upon the ground that the services charged
were rendered upon the request of the defendant in a suit against
him, and were beneficial to him, and were charged to the district
upon a mutual mistake of both parties.

From the report, and the case referred to in the report, it ap-
pears that Kittredge and another were the real defendants in the
suit, and that if a judgment had been rendered against them they
would have had no right of recovery over against either the town
or the district. The judgment in their favor protected them from
liability and entitled them to their costs. But both the plaintiff

Paddock *v.* Kittredge.

and defendant supposed the district the real defendant. In all this both were mistaken.

It appears also that the services of the plaintiff were valuable, "he bestowing great care and labor upon it, and being the sole counsellor in it." These services were clearly beneficial to the defendant. They served to shield him from a liability through which he might have been subjected to great loss and expense, without remedy. They entitled him to a bill of costs which in the absence of proof to the contrary, it is to be presumed he has collected. He enjoys the immunity through, and claims the benefit of the plaintiff's labors.

It seems to us that these circumstances clearly raise an equity on behalf of the plaintiff to recover of the defendant for the services rendered, being rendered at the defendant's request. The mistake being mutual, it would not be just to say that the defendant should gain this benefit from the mistake, that he should have the services of the plaintiff for nothing, while those services were highly beneficial to him. On the contrary, equity requires that neither shall gain or lose by this mutual error, but that both shall stand precisely as if all the facts, which led to the mistake, and the mistaken supposition itself, had not existed; as if it was the ordinary case of beneficial services rendered by one in the business of another for which the law implies a promise to pay. In such case neither party gains or loses by the error. If the plaintiff had paid the defendant money, instead of rendering service to him, upon precisely the facts which exist in this case, there could be no doubt that he could recover it back. It would be the common case of recovering for money paid by mistake. *White v. Miller*, 22 Vt. 380; *Hadlock v. Williams*, 10 Vt. 570.

Can a just distinction be drawn between money received and other property or beneficial service (money's worth) received? In each case the common ground of equity is, that the defendant upon his own request has received a beneficial value without consideration and by mistake, and which it would be inequitable for him to retain. The injustice of making the plaintiff lose, and the defendant gain by this mistake, is more palpable when we consider that the defendant was the party of record and knew that the benefit of the defence enured to him, and that if the dis-

Paddock *v.* Kittredge.

trict was. not liable by their vote, the plaintiff, in case of a mistake on that point, could not look to any body else than him for compensation, and would naturally look to him. The defendant could not suppose that the plaintiff's services were gratuitous. The plaintiff had no such intent, nor could others have such expectation.

It is urged that as the plaintiff did not perform his labor upon the credit of the defendant, and as the defendant made no express promise, the law can not hold the defendant liable without making a contract for the parties, when they never intended a contract as between themselves. This position is by no means tenable. There are numerous cases where from the circumstances the law implies a legal obligation and a promise, though there was no express promise and no intent between the parties to enter into a contract. *Ives* v. *Hulet*, 12 Vt. 327 ; *Sumner* v. *Williams*, 8 Mass. 161.

It is also said that when the party dealing with the agent has the same means of knowledge that the agent has as to the extent of his authority, the agent will not be personally liable. Cases of this kind may be found, but we are inclined to think they are cases where the agent himself derived no benefit from the act of the other party.

For this item, therefore, we think the plaintiff entitled to recover.

The second item in dispute is, for the counsel fees, services, expenses and costs of the plaintiff's suit against the district. This was a suit instituted by the plaintiff for his own benefit and without consultation with the defendant. The plaintiff had all the means of knowing, and knew as well as the defendant, what was the extent of the defendant's authority. He took upon himself the risk and responsibility of that suit. There are no circumstances connected with it that raise any equity against or implied obligation upon the defendant to refund its costs and expenses to the plaintiff. The suit was not for the defendant's benefit, nor was the plaintiff obliged to bring it before he could sue this defendant. If the defendant had told the plaintiff that he had authority to employ him without communicating to him the vote upon which his authority was based, and the plaintiff without any knowledge of the extent of the authority, but rely-

ing on the defendant's assurances in that respect, had rendered the services and sued the district and incured these costs, then there might, perhaps we may say, there would have been, a just claim on his part to recover for expenses which he had incurred in good faith and by the defendant's misleading him.   But as he had the same knowledge of the defendant's authority that the defendant had, he can not say he was misled by him and induced to bring a suit which he had no means of knowing he could not maintain.

 This item was properly disallowed.   As the county court found a balance due the defendant of twenty-one dollars and forty-six cents, that sum should be deducted from the item of eighty-one dollars and sixty-five cents, which we allow, and interest cast on the balance from June 1st, 1857 as stated in the referee's report, and for this amount the plaintiff is entitled to judgment.