## BACHMAN & Others *v.* LAWSON & Others.

IN ERROR TO THE SUPERIOR COURT OF THE CITY OF NEW YORK.

Submitted December 14th, 1883.—Decided January 7th, 1884.

*Alabama Claims—Assignment—Attorney and Counsel—Statutes.*

An agreement made a fortnight before the Treaty of Washington of 1871, and by which the owners of a ship and cargo taken by the armed rebel cruiser, the Florida, employed a person, whether an attorney at law or not, to use his best efforts to collect their "claim arising out of the capture," and

authorized him to employ such attorneys as he might think fit to prosecute it, and promised to pay him "a compensation equal to twenty-five per cent. of whatever sum shall be collected on the said claim," applies to a sum awarded to them by the Court of Commissioners of Alabama Claims, established by the act of June 23d, 1874, c. 459; and is not affected by § 18 of that act, providing that that court should allow, out of the amount awarded on any claim, reasonable compensation to the counsellor and attorney for the claimant, and issue a warrant therefor, and that all other liens, or assignments, either absolute or conditional, for past or future services about any claim, made or to be made before judgment in that court, should be void.

Action on a written contract to recover a commission agreed to be paid to the plaintiffs in the State court who are defendants here, for collecting a "claim arising out of the capture of the ship Commonweath and her cargo by the armed rebel cruiser The Florida."

Judgment was rendered for plaintiffs. Defendants then brought the cause here by writ of error.

*Mr. Edward Jordan* for plaintiffs in error.

*Mr. Frederic B. Jennings*, for defendants in error.

MR. JUSTICE GRAY delivered the opinion of the court

This action was brought in the Superior Court of the City of New York, by the members of the firm of Lawson & Walker against the members of the firm of Bachman Brothers, to recover compensation for services performed under a written agreement between them, dated April 25th, 1871, which recited that the defendants had employed, and by power of attorney of the same date had authorized, the plaintiffs to collect their "claim arising out of the capture of the ship Commonwealth and her cargo by the armed rebel cruiser, the Florida;" and by which the plaintiffs agreed "to use their best efforts, at their own expense, to collect the said claim in the shortest practicable time;" and the defendants, in consideration of the premises, agreed to allow and pay to the plaintiffs "a compensation equal to twenty-five per cent. of whatever sum shall be collected on said claim."

By the power of attorney, referred to in this agreement, the defendants appointed the plaintiffs their attorneys to prosecute

and collect the claim by such lawful proceedings and means as
to them might appear expedient, but at their own cost and
charge; and authorized them to receive on the defendants'
account whatever sums of money might be awarded on the
claim, and to give in their name proper acquittances therefor;
to execute all papers necessary to secure the transfer of the
claim to any party, department, or government which might
assume the payment thereof; and to employ for the prosecu-
tion of the claim such attorneys as they might think fit.

The plaintiffs, who are average adjusters, filed an abstract
of the claim in the Department of State, and in accordance
with the instructions issued by that Department, and from
papers and information furnished by the defendants, prepared
a memorial giving a full history of the circumstances relating
to the claim; and afterwards went to Washington several
times about this and other like claims; and after the passage of
the act of Congress of June 23d, 1874, c. 459, 18 Stat. 245, es-
tablishing the Court of Commissioners of Alabama Claims, pre-
pared and sent to the defendants for signature a petition to be
presented to that court, which, although repeatedly asked for,
was never returned; and the defendants, after endeavoring to
induce the plaintiffs to release them from the agreement, em-
ployed an attorney at law to prosecute their claim before that
court, which he did, and recovered thereon the sum of $3,034.16.

The plaintiffs brought this action to recover twenty-five per
cent. of this sum, less $125, the estimated expense which they
would have incurred had they proceeded and recovered the
money. The defendants, besides other defences presenting no
federal question, contended that the agreement sued on had
been annulled and rescinded by the act of 1874. The judge pre-
siding at the trial overruled the objection, and the jury returned
a verdict for the plaintiffs, on which judgment was rendered.
The defendants appealed to the general term of the Superior
Court, at which the judgment was reversed, and a new trial
ordered. The plaintiffs appealed to the Court of Appeals,
which reversed the judgment of the general term, and re-
mitted the case to the Superior Court for further proceedings.
See 81 N. Y. 616. The Superior Court thereupon entered

judgment in accordance with the verdict, and the defendants sued out this writ of error.

In support of the writ of error it was contended that the agreement sued on had relation solely to the claim which existed at its date; that that claim was extinguished by the operation of the Treaty of Washington, the Geneva Award, and the payment by Great Britain to the United States of the sum awarded; and that the claim successfully prosecuted under the act of Congress and before the Court of Commissioners was a new claim, created by that act, and after the making of the agreement; or, if it could be treated in any respect as the same claim, was so changed in its character and circumstances that the agreement had no application to it.

But, as was said by Mr. Justice Story, delivering the judgment of this court, in a similar case :

" The right to indemnity for an unjust capture, whether against the captors or the sovereign, whether remediable in his own courts, or by his own extraordinary interposition and grants upon private petition, or upon public negotiation, is a right attached to the ownership of the property itself." " The very ground of the treaty is, that the municipal remedy is inadequate ; and that the party has a right to compensation for illegal captures, by an appeal to the justice of the government." " The right to compensation, in the eye of the treaty, was just as perfect, though the remedy was merely by petition, as the right to compensation for an illegal conversion of property, in a municipal court of justice." " It recognized an existing right to compensation, in the aggrieved parties, and did not, in the most remote degree, turn upon the notion of a donation or gratuity. It was demanded by our government as a matter of right, and as such it was granted by Spain." *Comegys* v. *Vasse*, 1 Pet. 193, 215–217.

The claim established before the Court of Commissioners of Alabam Calaims was manifestly the very claim contemplated by the agreement in suit. It is described in that agreement as a " claim arising out of the capture of the ship Commonwealth and her cargo by the armed rebel cruiser the Florida." The agreement bears date only a fortnight before the Treaty of

Washington was made and concluded, by which it was agreed between the United States and Great Britain that all claims growing out of acts committed by the Alabama and other vessels should be referred to a Tribunal of Arbitration. The Florida was one of the vessels which were determined by the Geneva Award to have put out from British ports through neglect of international duty on the part of Great Britain, and compensation for the wrongs done by which to these defendants and others was included in the sum awarded in favor of the United States. The claim of the defendants was one for which compensation was justly due to them from Great Britain; was demanded by the United States from Great Britain as a matter of right; as such was awarded to be paid and was paid by Great Britain to the United States, in accordance with the provisions of the treaty between the two nations, and with the determination of the Tribunal of Arbitration created by that treaty; and was paid by the United States to the defendants, out of the money received from Great Britain, pursuant to the directions of the act of Congress, and to the decision of the Court of Commissioners established by that act. The defendants were the original owners of the claim, and the money was granted and paid by the United States to them as such. The money so demanded and received by the United States from Great Britain, and paid by the United States to the defendants, was money collected on the claim described in the agreement. *Comegys* v. *Vasse*, above cited; *Phelps* v. *McDonald*, 99 U. S. 298; *Leonard* v. *Nye*, 125 Mass. 455.

The other points relied on in support of the writ of error, so far as they present any federal question, are based upon the following provisions of the act of 1874:

"SECT. 18. In case any judgment is rendered by said court for indemnity for any loss or claim hereinbefore mentioned against the United States, at the time of the giving of the judgment the court shall, upon motion of the attorney or counsel for the claimant, allow, out of the amount thereby awarded, such reasonable counsel and attorney fees, to the counsel and attorney employed by the claimant or claimants respectively, as the court shall de-

termine is just and reasonable, as compensation for the services rendered the claimant in prosecuting such claims, which allowance shall be entered as part of the judgment in such case, and shall be made specifically payable as a part of said judgment for indemnification to the attorney or counsel, or both, to whom the same shall be adjudged ; and a warrant shall issue from the treasury in favor of the person to whom such allowance shall be made respectively, which shall be in full compensation to the counsel or attorney for prosecuting such claim ; and all other liens upon, or assignments, sales, transfers, either absolute or conditional, for services rendered or to be rendered about any claim or part or parcel thereof provided for in this bill, heretofore or hereafter made or done before such judgment is awarded and the warrant issued therefor, shall be absolutely null and void and of none effect." 18 Stat. 249.

It was argued that the act, by prescribing a mode of proceeding for collecting the claim which required the services of attorneys at law, rendered the agreement in question inoperative, because the plaintiffs, not being such attorneys, were incapable of performing it. But the power of attorney executed at the same time as the agreement, and referred to therein, authorized the plaintiffs to use all such lawful means and proceedings, and to employ such attorneys, as they might think fit, for the prosecution of the claim.

It was further contended that the section above quoted rendered illegal and void all agreements, made before judgment, to pay compensation for services about any such claim. But the prohibition is clearly limited to liens, sales, or assignments, which create a right of property in the claim itself, and does not extend to a mere personal agreement to pay as compensation for such services a sum of money equal to a certain proportion of the amount which may be recovered.

The other points made in argument present no federal question, and therefore afford no ground upon which this court can revise the judgment of the State court. *Murdock* v. *Memphis*, 20 Wall. 590.

*Judgment affirmed.*