CHARLES P. GORELEY *vs.* BENJAMIN F. BUTLER.

Suffolk.    March 14, 1888. — May 4, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Alabama Claims — Insolvent Debtor — Constitutional Law — Money had and Received.*

A claim within the U. S. St. of June 5, 1882, and presented thereunder to the Court of Commissioners of Alabama Claims by one who subsequently and before its allowance becomes insolvent, is "property" such as will pass to his assignee under the Pub. Sts. c. 157, §§ 44, 46.

A draft issued by the United States upon the allowance of the claim, was paid to the wrong person, who, after a demand upon him by the assignee for the draft, advised the insolvent's widow to take out administration, and signed her bond, with the agreement that he should retain the draft and its proceeds as security. *Held,* that the assignee might recover the proceeds from him in an action for money had and received.

CONTRACT, by the assignee in insolvency of the estate of Isaac H. Taylor, for money had and received. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on an agreed statement of facts, in substance as follows.

On or about June 14, 1863, Taylor, who was a passenger on board the barque Good Hope, lost his personal effects and sustained other damages by reason of that vessel's capture and destruction by the Georgia, a tender of the Confederate cruiser Alabama. On January 13, 1883, Taylor filed a claim for such damages in the Court of Commissioners of Alabama Claims, and subsequently that court awarded to him the sum of $3,785.25 and interest, amounting in all to $5,874.15, which represented the actual loss and damage sustained by him. On June 20,

1883, Taylor, who was a citizen of Boston, filed a voluntary petition in insolvency in the Court of Insolvency for the county of Suffolk, and on July 20, 1883, the plaintiff was duly appointed assignee of his estate, and a legal assignment thereof duly issued to him. A schedule of the assets of the estate did not disclose such claim, no other assets of value were received by the assignee, and no discharge was ever granted to the insolvent. On February 20, 1885, a draft issued from the United States Treasury for the amount of the award payable to the order of Taylor, and was sent to the defendant and others, the attorneys of record, and was duly received by them.

Taylor died at Boston, intestate, on February 24, 1885, and thereupon his widow applied to the defendant for the payment over to her of the award. The defendant advised her that such payment could not be made to her unless she took out letters of administration in the District of Columbia, and accordingly she accompanied him to Washington, and on March 7, 1885 applied to the Probate Court of the District for letters of administration. On March 31, 1885, she was duly appointed administratrix, and the defendant signed her bond as surety, under an agreement with her to retain the draft and the proceeds thereof as security for his undertaking. No appraisal was ever made of the estate, nor had the widow performed any act as such administratrix. The plaintiff made a demand upon the defendant for the draft before the petition by the widow to be appointed administratrix was filed, and notified the defendant that he was the assignee of Taylor's estate, and as such entitled to the draft and the proceeds thereof. On April 4, 1885, the widow gave a power of attorney to the defendant to indorse the draft and receive payment thereon, and the defendant thereupon received the proceeds of the draft, paying therefrom, before this action was brought and without the knowledge of the plaintiff, attorney's fees to the amount of $1,087, and the sum of $126 for the intestate's funeral expenses.

The Treaty of Washington between the United States and Great Britain, promulgated July 4, 1871, the Award of the Tribunal of Arbitration at Geneva, made September 17, 1872, the acts of Congress of June 23, 1874, and June 5, 1882, which, it was agreed, made provision for the payment of losses suffered

through certain cruisers, called the "inculpated cruisers," among which was the Georgia, the laws of Maryland as continued in force by the laws of the District of Columbia, and the laws of the District of Columbia, are to be treated as facts in this case, and may be referred to at the argument.

If the plaintiff was entitled to recover, judgment was to be entered for him for the sum of $4,661.15, and interest thereon; otherwise, the plaintiff was to become nonsuit.

*B. F. Butler*, (*F. L. Washburn* with him,) for the defendant.

*C. L. Woodbury & W. H. H. Andrews*, for the plaintiff.

HOLMES, J. So far as appears, the claim of the insolvent for losses by a tender of the Alabama was within the act of Congress of June 23, 1874, and therefore probably this case is governed by *Leonard* v. *Nye*, 125 Mass. 455; *Jones* v. *Dexter*, 125 Mass. 469, 471. But it is unnecessary to stop at this point, because, whatever the original nature of the claim, the act of June 5, 1882, had been passed, and proceedings under it had been begun by the insolvent, before the dates when he filed his petition in insolvency and the plaintiff was made his assignee.

The insolvent act provides that "the assignment shall vest in the assignee all the property of the debtor, real and personal," etc. Pub. Sts. c. 157, § 46. When the sovereign power has established a claim against itself, or against a fund in its hands, and has provided a tribunal and all necessary machinery for its establishment and collection, such a claim is "property" within the meaning of the act.

If the claim is established in pursuance of what would have been an antecedent legal duty on the part of the sovereign but for its sovereignty, the proposition which we lay down follows *a fortiori* from decisions like *Leonard* v. *Nye*, *Jones* v. *Dexter*, *ubi supra*, and *Comegys* v. *Vasse*, 1 Pet. 193, that some claims against the sovereign will pass in bankruptcy or insolvency, although the act which recognizes and makes them effectual is not passed until after the assignment. These cases dispose of any general objection that claims against the sovereign cannot be legal rights in a strict juridical sense. Such claims are given all the incidents of property by law, although, since the continued recognition of them until they can be proved, and the final payment of them, depend upon the will of the sovereign, — that is,

upon the law remaining unchanged, as in the usual case of claims against subjects, — such recognition and payment in this case depend upon the honor of the quasi debtor or trustee, and not upon a superior power, stranger to the undertaking.

The English courts, although they have hardly gone so far as the courts of this country, have treated as property within the English bankrupt act a pension granted on the retirement of a public officer, (possibly in pursuance of some sort of understanding at the time of his taking office,) which depended for its payment on an annual vote of a colonial legislature. *Ex parte Huggins*, 21 Ch. D. 85. In this case, it is suggested, and we agree, that it could not be doubted that bonds of a foreign or of the home government would be property.

If now the claim which the statute establishes, instead of being based upon some sort of consideration, is granted as a pure gratuity, as in *Heard* v. *Sturgis*, 146 Mass. 545, still, when granted, it is just as absolute a claim, it is to the same extent and in the same sense a legal claim, and it has the same security for being paid, as the other. It depends upon the will of the sovereign no more than the other. It is not like the case of an allowance depending for its continuance on the will of a private individual, who pays it, as in *In re Wicks*, 17 Ch. D. 70, or upon the discretion of a subordinate public officer, as in *Ex parte Webber*, 18 Q. B. D. 111.

It was argued that, by force of the U. S. Rev. Sts. § 3477, this claim could not be assigned in insolvency before it was allowed. Assuming that that section applies to claims like the present, (*Stevens* v. *United States*, February 26, 1883, in Rules, Opinions, &c. of Court of Comm. of Ala. Claims, Washington, 1885,) it does not apply to assignments in bankruptcy, although upon a voluntary petition, (*Erwin* v. *United States*, 97 U. S. 392,) and by parity of reasoning it does not apply to assignments in insolvency. If it should be suggested that, although property of the insolvent, it was not property " which he could have lawfully assigned " in person, and therefore was not within the words of the State insolvent act, the answer is, that it is clearly within the general intent of the Pub. Sts. c. 157, §§ 44, 46, and that it is within the specific words " rights of action for goods or estate, real or personal." *Jones* v. *Dexter, ubi supra.*

It was suggested that we should reconsider the question of the constitutionality of the State insolvent law, on the ground of a recent decision of the Supreme Court of the United States upon the clause of the Constitution touching the regulation of commerce. *Wabash, St. Louis, & Pacific Railway* v. *Illinois,* 118 U. S. 557. We discover no indication in that case that the majority intended to disturb the decision in *Ogden* v. *Saunders,* 12 Wheat. 213, and the cases which have followed it. If what has been understood for sixty years to be the law, and what the Supreme Court of the United States has pronounced "settled and forever closed," is to be overthrown, it must be done elsewhere than in this court. *Baldwin* v. *Hale,* 1 Wall. 223, 228. *Boyle* v. *Zacharie,* 6 Pet. 348; *S. C.* 6 Pet. 635, 643. *Blanchard* v. *Russell,* 13 Mass. 1, 16. *Day* v. *Bardwell,* 97 Mass. 246, 250. *Barton* v. *White,* 144 Mass. 281.

Finally, it was argued that this action could not be maintained against the present defendant. We see no ground for doubt. The plaintiff had no notice of the proceedings instituted by his insolvent, until the latter had got his judgment, and a draft for the amount was in the defendant's hands. Then the plaintiff demanded the draft, and was entitled to receive it. *Quimby* v. *Carr,* 7 Allen, 417. *Cook* v. *Holbrook,* 6 Allen, 572, 573. *Cox* v. *Prentice,* 3 M. & S. 344. The fact that the defendant subsequently advised the widow of the insolvent to take out administration in Washington, that she did so, and that he signed her bond, with an agreement that he should retain the draft as security, cannot better his case. It is asked, why, if the claim of the insolvent passed to the plaintiff, he cannot recover against the United States, notwithstanding a payment by them to the wrong person. The answer is, that it is settled that the effect of the judgment of the court was to appropriate a fund to the claim, and to transfer the claim to that fund, leaving the question of title open to subsequent litigation in the ordinary courts. The statute does not leave the United States subject to be charged a second time, any more than, on the other ·hand, it makes the decision of the Court of Commissioners of Alabama Claims conclusive as to the person entitled to its bounty.

*Judgment for the plaintiff.*