# JEROME F. MANNING

v.

# BENJAMIN F. LEIGHTON.

ADDISON COUNTY, FEBRUARY TERM, 1891.

Before: Ross, Ch. J., TAFT, MUNSON AND THOMPSON, JJ.

*Implied promise. Attorney's lien. Commissioners of Alabama Claims. U. S. R. S., § 3,477. What will confer jurisdiction upon probate court. Where debt is asset. Ancillary administration.*

The plaintiff began the prosecution of certain claims before the Court of Commissioners of Alabama Claims as reëstablished by the act of 1882, under contract that he should receive for his services one-half the amount recovered. After the proofs had been filed, that court decided that judgment would not be rendered until ancillary administration had been taken out in the District of Columbia. Before this was done the plaintiff was disbarred, and the clerk of the court was directed to substitute for that of the plaintiff the name of any other attorney which the claimants might in writing suggest. Thereupon, the plaintiff agreed with H., then his clerk, to enter as administrator and prosecute the claims to judgment. Before this was done H. began practice for himself, and arranged with the defendant to enter as administrator, and employ him, H., as the attorney. The defendant did so, and obtained judgments upon the strength of the evidence already furnished. These judgments were partially satisfied, the defendant settled his accounts in the probate court for the District of Columbia, and paid over to the claimants the sums their due before the commencement of this suit. The defendant had no knowledge that the plaintiff had rendered services for which he had not been paid, nor of the arrangement between the plaintiff and H. *Held,*

1. The fact that the plaintiff did not present his claim for services before the probate court for the District of Columbia does not necessarily bar his right of recovery, for the claim is against the administrator personally, and not against the estate.

2. The plaintiff had no lien on the funds in the hands of the defendant.

   (a) The act creating the court provided that it should on motion allow the compensation of attorneys, and enter the same as a part of the judgment, and that all other liens should be of no effect.

   (b) R. S. U. S. § 3,477, providing that all assignments of claims against the United States shall be void unless made with certain formalities, would preclude the idea of a lien, since the claim, being against a fund which had been covered into the treasury of the United States, would be in effect against the United States.

3. If the plaintiff might, at some stage of the proceedings, and in some manner, have asserted a lien against these judgments, it does not follow that the defendant is liable, for he had no notice of such a lien until after he had paid over the funds.

4. The fact that the defendant obtained judgment in these cases upon the proofs which the plaintiff had already furnished, and so had the benefit of what the plaintiff had done, does not raise an implied promise upon the part of the defendant to pay the plaintiff for his services in obtaining such evidence, for when he first became connected with the case he found this evidence among the files of the court, beyond the control of the plaintiff, and knew nothing about the contract under which it had been furnished.

5. The two things necessary to confer jurisdiction upon a probate court for the granting letters of administration are, the death of the person upon whose estate they are granted, and domicile or assets within the district, and if those two matters appear of record the administration is at least *prima facie* valid.

6. A claim enforceable in the District of Columbia and no where else is an asset there upon which administration may be granted, especially if, as in this case, the court refuses to give judgment save in the name of an administrator appointed in that district.

7. The fact that the administrator, in his petition to the probate court praying for administration, set forth that he was a

creditor, while the settlement of his account showed that he was not, would not invalidate his appointment.

8.  The Court of Commissioners might properly refuse to give judgment in favor of a foreign administrator, and require the appointment of an administrator in the District of Columbia.

9.  The defendant cannot be held liable upon the contract of the foreign administrators with the plaintiff, for the administration of the plaintiff was ancillary to and independent of the administration in the place of domicile.

General assumpsit.    Heard at the December term, 1890, START, J., presiding, upon the report of a referee.    Judgment *pro forma* for the plaintiff.    The defendant excepts. The opinion states the case.

*Stewart & Wilds* for the defendant.

There was no lien.    See terms of act creating Court of Alabama Claims and R. S. U. S. § 3,477.    Also *Bachman* v. *Lawson*, 109 U. S. 659; *Brooks* v. *Ahrens*, 68 Md. 212; *Wylie* v. *Cox*, 15 How. 415; *Trist* v. *Child*, 21 Wall. 441: *Wright* v. *Tebbitts*, 91 U. S. 252; *Spofford* v. *Kirk*, 97 U. S. 484; *Hobbs* v. *McLean*, 117 U. S. 575; *Bailey* v. *United States*, 109 U. S. 432; *Goodman* v. *Niblack*, 102 U. S. 556; *Erwin* v. *United States*, 97 U. S. 392; *St. Paul & Co.* v. *United States*, 112 U. S. 733; *Flint & Co.* v. *United States*, 112 U. S. 762; *Mellison* v. *Allen*, 30 Kan. 382.

The defendant had no notice of the lien, if there was one, and was not bound by it.    1 Jones Liens, § 209; *Wensh* v. *Hole*, 1 Doug. 238; *Read* v. *Dupper*, 6 T. R. 361; *Mitchell* v. *Oldfield*, 4 T. R. 123; *Marshall* v. *Meech*, 51 N. Y. 140; *Pinder* v. *Morris*, 3 Caines 165; *Heartt* v. *Chipman*, 2 Aik. 162; *Hooper* v. *Welch*, 43 Vt. 169; *Young* v. *Dearborn*, 7 Foster 324; *Courtney* v. *McGavoc*, 23 Wis. 619; *Weed* v. *Boutelle*, 56 Vt. 581.

*A. P. Tupper* and *J. F. Manning* for the plaintiff.

The facts reported show that the defendant had sufficient notice to put him upon inquiry as to all the facts. *Blaindell* v. *Stearns*, 13 Vt. 179; *Stafford* v. *Ballou*, 17 Vt. 329; *McDaniels* v. *Flower Brook Mfg. Co.*, 22 Vt. 274; *Stevens et al.*, v. *Goodenough*, 26 Vt. 684; *Lovell* v. *Field et al.*, 5 Vt. 218.

The Court of Alabama Claims was bound to recognize the foreign administrators and pay them the money. *Williams* v. *Sounders*, 5 Cold. 60; *Tompkins* v. *Tompkins*, 1 Sto. 544; *Crondson* v. *Leonard*, 4 Cranch 434; *The May*, 9 Cranch 116; *Gelston* v. *Hoyt*, 3 Wheat. 246; *Armstrong* v. *Lead*, 12 Wheat. 169; *Eliot* v. *Piersol*, 1 Pet. 338; *Thompson* v. *Tolmie*, 2 Pet. 157.

The probate court had no jurisdiction to appoint the defendant administrator. The petitions do not allege the death of the intestate, and there were no assets in the District of Columbia. *Bachman et al.*, v. *Lawson et al.*, 109 U. S. 659; Smith's Lead. Cas., p. 669; Freeman Judg. § 608; Sch. Exr. and Admr. §§ 80, 91, *et seq;* *Allen* v. *Dundas*, 3 T. R. 125.

There was an implied promise from the defendant to pay the plaintiff's claim. *Paddock* v. *Kittredge*, 31 Vt. 378; *Booth* v. *Fitzpatrick*, 36 Vt. 681; *Cobb* v. *Cowdrey et al.*, 40 Vt. 25; *Barlow* v. *Smith*, 4 Vt. 139, 144; *Glass* v. *Beach*, 5 Vt. 172; *State* v. *St. Johnsbury*, 59 Vt. 337; *Corey* v. *Gale*, 13 Vt. 644; Bennett's Vermont Justice, p. 55.

The plaintiff had an attorney's lien upon the funds. *Harris* v. *Osborne*, 26 M. & P. 228; *Nichols* v. *Wilson*, 11 M. & W. 105; *Whitehead* v. *Lord*, 7 Exch. 691; *Mygate* v. *Wilcox*, 45 N. Y. 306; *Nickson* v. *Phelns*, 29 Vt. 198, 204; *Williams* v. *Ingersoll*, 89 N. Y. 508; Sto. Equity, 1,040.

These war premiums were not claims against the United States. *Bailey* v. *United States*, 109 U. S. 432; *Spofford* v. *Kirk*, 97 U. S. 484; 2 Abbott's Nat. Dig. 609; *Burnard* v. *Rodacanachi*, L. R. 5 C. P. 424.

The opinion of the court was delivered by

MUNSON, J. The tribunal of arbitration which met at Geneva, in Switzerland, under the provisions of the treaty of Washington, for the adjustment of the claims of the United States against Great Britain, known as the Alabama claims, awarded to the United States a certain sum in gross in satisfaction of its demands. In 1874, the Court of Commissioners of Alabama Claims was established by act of Congress to effect a distribution of the sum so awarded; but after the satisfaction of all claims which the court was authorized to allow, a portion of the award remained undistributed, and was covered into the treasury of the United States. In 1882, this court was reestablished for the allowance of claims directly resulting from damage done on the high seas by Confederate cruisers, and claims for the payment of premiums charged for war risks after the sailing of any Confederate cruiser; and provision was made for the payment of the claims so allowed by the secretary of the treasury out of the balance of the Geneva award not appropriated to claims allowed under the previous act. This suit is to recover for services rendered in the prosecution of claims of the second class above named before the Court of Commissioners as thus reestablished.

Soon after the passage of the act of 1882, the plaintiff undertook to prosecute the demands of certain complainants, under contracts by which he was to have one-half of the amount recovered and collected, and was to make no charge unless recovery was had. These demands were based upon payments made by the complainants as agents of certain

beneficiaries, who had afterwards reimbursed such com-
plainants for the sums advanced. While these claims were
pending, the court promulgated a construction of the statute
under which they were presented, to the effect that when
payment of premiums had been made by one party in his
own name for the benefit of others, and the amount of such
payment had been refunded to him by the persons for whose
benefit the payment was made, the petition should be made
out and sworn to in the name of the party who paid the pre-
miums, on behalf of the persons for whose benefit such pay-
ment was made, and should state the names and residences
of the parties beneficially interested, and the amount of their
respective interests; and that separate judgments should be
entered in favor of such beneficiaries. After this was pro-
mulgated, the petitions in the cases in which the plaintiff ren-
dered the services sued for were amended accordingly. The
plaintiff subsequently continued the prosecution of the claims
under such circumstances regarding employment by the ben-
eficiaries as will be hereafter stated. Previous to the 15th
day of July, 1885, the proofs were completed, and the
claims ready for judgment as the petitions then stood. On
that day the court announced a further decision, to the effect
that where the claimant's administrator received his appoint-
ment without the United States, ancillary administration
must be taken out in the District of Columbia, and that the
ancillary administrator only could maintain the claim of the
decedent and take judgment thereon. It was also held that
a judgment could not be rendered in favor of a guardian.

On the 29th day of July, 1885, and before any further
action had been taken by the plaintiff upon the claims in
question in view of these decisions, the plaintiff was prohib-
ited from appearing in the Court of Commissioners, and
from exercising in any way the functions of an attorney and
counsellor of that court; and the clerk was authorized to
substitute for the plaintiff's name the name of any other

attorney, upon the receipt of a written request to that effect from the claimant or his legal representative. The plaintiff did not appear in court after this, and rendered no further services in connection with the claims; but he entered into an arrangement with one Edward E. Holman, who was then a clerk in his office, by which it was agreed that Holman should procure an appointment in the Orphans' Court of the district as ancillary administrator of the several beneficiaries, and appear in the several cases in the interest of the plaintiff and take judgment upon the several claims, and receive from the plaintiff for these services a certain share of the amounts collected. Before anything had been done under this agreement, Holman abandoned his employment as the plaintiff's clerk and commenced practice for himself; and he thereupon procured the defendant to take out the administration made necessary by the above decision. After duly qualifying under his appointments as administrator, the defendant employed Holman to appear in the several cases and obtain judgment. Holman was regularly substituted in place of the plaintiff as attorney, and prosecuted the claims in behalf of the defendant. But no further proofs were furnished, except the depositions of the defendant, in which he referred to the proofs already on file, and expressed his willingness to accept as correct the amounts therein named. Judgments were obtained in due course, of which the defendant received part satisfaction.

The beneficiaries whose claims were thus preferred for allowance by the plaintiff, and of whose estates the defendant was thus appointed administrator, with the exception of Henry W. Slicer, died in foreign countries, and left estates which were there administered. In some of the cases the entire service of the plaintiff is shown to have been rendered after the death of the beneficiary, and this is apparently true of all the cases, except that in the case of Raynsford the initiatory proceedings were before his death. In some of

the cases the plaintiff was directly employed or clearly recognized by the personal representative of the beneficiary in the country of principal administration, as attorney for the further prosecution of the claim; but no adoption of the contract made with the complainant is shown in any case. Slicer died in Baltimore, Md., leaving minor children, of whom Laura G. Cooper was the duly appointed guardian. The amendment and subsequent prosecution of the petition by the plaintiff was done as her attorney. Raynsford died at Rio Janeiro, in Brazil, leaving a widow, who was there duly appointed his administratrix. She furnished such further proofs as the plaintiff called for. Grossman died in the kingdom of Prussia, leaving a widow who was appointed his executrix, and who continued the plaintiff as her attorney. Miguel Bou died in Barcelona, in Spain, and the petition in his case was further prosecuted in the name of his son as executor, who recognized the plaintiff as attorney for the complainant, and appointed an agent to protect the beneficiary's interest. Zangroniz was a member of the firm of Y. M. Zangroniz & Co., the other partners being Baron Kessel and Sebastian de Lassa, residents of Cuba. One Kerlegand, of Havana, was appointed executor, etc., of the estate of Zangroniz, and recognized the plaintiff as his attorney in the prosecution of the decedent's claim. But no judgment was rendered in favor of the Zangroniz estate; the judgment upon this claim being awarded to Kessel and De Lassa as surviving partners, but without any such judgment being asked by them or by any representative or attorney in their behalf. Cosme de la Torriente died in Cuba, and one Rionda was duly appointed administrator of his estate, and as such agreed that the plaintiff should receive for his services fifty per cent of any judgment obtained, and should have a lien upon any draft which might be issued in payment of such judgment, and be the lawful custodian of such draft until the amount due him should be paid. The defend-

ant has settled his several administration accounts, and, with the exception of the amounts received on the Zangroniz claim and in the Slicer estate, has paid over the sums received, less the expenses allowed, to the personal representatives of the several decedents in the foreign countries named.

The plaintiff sought to establish before the referee an express promise by the defendant to pay for these services. The referee having failed to find that any promise was made, the plaintiff now claims that the circumstances were such that the law will imply one. This claim must rest upon one of two grounds; either that the defendant has received and disposed of a fund upon which the plaintiff had a lien, and out of which it was the duty of the defendant to see that the plaintiff was paid; or that the defendant has received the benefit of the plaintiff's services under such circumstances that the law casts upon him the burden of compensation.

But the defendant suggests that the plaintiff's only remedy upon a claim of this nature was in the court where the defendant accounted for the estates. The case shows that to establish a claim against a deceased person's estate in the District of Columbia the claim must be filed with the register of wills within thirteen months after the issue of letters of administration, and that the notice required by law to be given to creditors in such cases was duly given by the defendant, but that the plaintiff did not, within the period named, file any claims against these estates. Ordinarily the persons referred to as creditors of an estate are those who had claims against the deceased in his lifetime; and the requirements concerning the presentation of claims ordinarily refer to demands of this character, and not to such liabilities as may have been incurred by the administrator in the settlement of the estate. Without more definite findings as to the probate procedure in the District of Columbia, we should hesitate to reject any claim which the plaintiff may have

obtained against the administrator, as barred by the settlement of the estate. It will therefore be necessary to consider the grounds of the plaintiff's claim.

The plaintiff claims to have had an attorney's lien upon the money recovered by the defendant; and the defendant insists that any right of this kind which the plaintiff might otherwise have had was barred, both by the provisions of the act constituting the court, and by the Revised Statutes of the United States. By the act of 1874 it was provided that the court should upon motion allow the compensation of attorneys, and enter the same as a part of its judgment, and that all other liens upon the judgment should be of no effect. The act of 1882 reëstablished the court with its former obligations, duties and powers; directed that the practice and proceedings established by the former act should be followed; and authorized the rendition of judgments in the mode and subject to the conditions, limitations and provisions of that act. This seems clearly to revive the provisions of the act of 1874 above recited. It has been so held in Maryland. *Brooks* v. *Ahrens*, 68 Md. 212. And those provisions being in force, an attorney's lien could not be acquired. *Bachman* v. *Lawson*, 109 U. S. 659.

The plaintiff's right to assert a lien seems also to be inconsistent with section 3,477 of the Revised Statutes of the United States, as construed by the United States Supreme Court. It is provided by that section that all transfers and assignments of any claim upon the United States, or of any interest therein, shall be absolutely null and void, unless made with certain formalities, and after the allowance of the claim and the issuing of a warrant therefor. In several cases involving the claims of agents and attorneys for compensation for services rendered in establishing claims, this provision has been treated as inconsistent with the existence of any lien upon the sum recovered. *Trist* v. *Child*, 21 Wall. 441; *Wright* v. *Tebbitts*, 91 U. S. 252. In *Spofford*

v. *Kirk*, 97 U. S. 484, the court held that an assignment of an interest in a pending claim was a nullity as between assignor and assignee, and said of this section : "It strikes at every derivative interest, in whatever form acquired." The limitations since placed upon the language quoted do not touch the decision itself as an authority against the enforcement of liens. *Bailey* v. *United States*, 109 U. S. 432. In *United States* v. *Gillis*, 95 U. S. 407, where it was sought to restrict the application of this section, it was said to cover "all claims against the United States in any tribunal in which they may be asserted."

But the plaintiff insists that these claims are not "claims against the United States" within the meaning of the statute or the decisions, but are merely demands which the claimants are permitted to prosecute against a special fund. It is true that the judgments recovered are to be satisfied out of a particular fund, and that the United States assumes no responsibility beyond this. But the money had been covered into the treasury of the United States, and the right to it was to be established by legal proceedings. Whatever the relation of these parties to the United States may have been before the act of 1882 was passed, it is certain that by that act they were placed upon the footing of persons having a right to establish claims against the United States. In *Hobbs* v. *McLean*, 117 U. S. 575, a claim against the United States is defined to be "a right to demand money from the United States." We think the claims in question were claims against the United States within the meaning of the law, and so within the scope of the section referred to.

But if the plaintiff was entitled to assert a lien, it does not follow that the defendant is liable for having paid over these judgments without satisfying it. The report contains nothing to charge the defendant with a knowledge of the plaintiff's claim upon the funds transmitted. The defendant knew that the plaintiff had rendered these services, but had no

knowledge of the terms upon which they were rendered, and supposed that the plaintiff's claim for compensation was against the persons who had employed him.  He knew that the plaintiff had been precluded from practicing in the Court of Commissioners, but had no knowledge that Holman had agreed to prosecute the claims in his interest, and supposed that the cases could be taken up by any attorney who might be employed to do so.  We do not see how the defendant could be held liable by reason of the existence of a lien, unless he knew or should have known that one was claimed.  An attorney's lien is either a retaining lien or a charging lien.  A retaining lien is based upon the possession of money or papers, and expires when the possession ends. A charging lien is the right to make the claim for compensation a charge upon the judgment, and this is not perfected until notice is given to the defendant.  *Hurlbert* v. *Brigham*, 56 Vt. 368; *Weed Sewing Machine Co.* v. *Boutelle,* 56 Vt. 570.  The usual assertion of a charging lien would have occurred if this plaintiff had given notice of a lien to the United States, in order to prevent the payment of the judgment to this defendant, and make the United States liable if the judgment should be paid in disregard of the notice. If the money is suffered to reach the one who recovers it, the question as regards him is ordinarily reduced to one of personal liability.  Here, the money has come into the hands of the defendant, the plaintiff in the suits in which the judgments were recovered, who in ordinary course would have been the plaintiff's client; and the money so received having been disbursed in due course of administration, the plaintiff now seeks to charge the defendant with the payment of his claim, on the ground that he had a lien on the funds thus recovered and disbursed.  The effort is to impose a lien upon the funds in the hands of the recovering party, and through the lien a personal responsibility where otherwise none would have existed.  If other conditions permit-

ted, this certainly could not be accomplished without notice ; and the mere knowledge that a former attorney had rendered services in connection with the claims did not constitute notice. Upon the findings of the referee we cannot say that the circumstances were such as to put the defendant on inquiry and charge him with knowledge of a lien. And there being no notice of a lien, the defendant could safely assume that the plaintiff had had his pay, or that he relied upon the personal responsibility of his employers.

It is true that the funds realized from the Slicer and Zangroniz claims are still in the hands of the defendant. But the views before stated as to the right of the plaintiff to assert a lien leave no ground upon which this fact can entitle the plaintiff to a judgment for any part of the compensation claimed. If it should seem that the defendant's possession of this money ought to avail the plaintiff in some way, it must be remembered that this is not a proceeding to reach and control the fund in satisfaction of a lien, but a suit to establish a personal liability for the payment of the claim. If the defendant could have been held liable on account of the other cases in a suit of this character brought while the money was still in hand, special difficulties might be found in the way of recovery on account of these two. The plaintiff's services in the Slicer case were rendered upon the employment of the guardian of the heirs, and judgment was obtained by the defendant as administrator of Slicer's estate. The Zangroniz claim was prosecuted by the plaintiff for the foreign executor of Zangroniz, while the fund is held by the defendant as administrator of the estates of Kessel and De Lassa.

It remains to consider whether the defendant has taken the benefit of services rendered by the plaintiff under such circumstances that he should be and can be compelled to pay for them. Did the use of the proofs filed by the plaintiff, in the circumstances stated, fasten upon the defendant a

legal obligation to compensate the plaintiff? It is true that
the law will sometimes imply from circumstances a request
to render services when no actual request was made, and a
promise to pay for them where no such promise was ex-
pressed; and this without there having been any intention
between the parties to enter into a contract. *Ives* v. *Hulet*,
12 Vt. 314, 327; *Paddock* v. *Kittredge*, 31 Vt. 378, 384.
But it is difficult to see how the plaintiff in this case can re-
cover on the ground of an implied undertaking on the part
of the defendant to pay for his services. At the time the
plaintiff rendered the services the defendant was an absolute
stranger to the proceedings and to every interest involved in
them. When the defendant became connected with the pro-
ceedings the proofs were in the files of the court, and entirely
beyond the control of the plaintiff. The defendant had no
communication with the plaintiff in regard to these proceed-
ings, and received from him nothing pertaining to them.
He entered upon the trust to meet a requirement of the court,
and took charge of the cases with its full approval. He did
not know that the plaintiff had made an arrangement with
Holman, and was relying upon him to act in his interest.
We find nothing in the case upon which the law can raise
an implied promise.

The procurement of judgments upon proofs provided at
the expense of the plaintiff, and receiving what appears to
have been sufficient compensation for the entire business
while ignoring the plaintiff's claim, certainly presents an
inequitable feature which appeals to the careful considera-
tion of the court. But the apparent inequity of this pro-
ceeding is somewhat modified by other features of the case.
True, the plaintiff's right to pursue employers in foreign coun-
tries, if he is in a position to assert that right, can hardly be
considered a substantial remedy in view of the nature and
size of the demands. But the law under which the claims
were presented seems to have provided a method by which

the plaintiff could have had any proper claim for compensation allowed by the court, and made the basis of a judgment in his favor. He might have taken measures to charge the fund, or have proceeded against the estate or against the defendant personally, during the year or more that elapsed between the recovery of the judgments and the making of the disbursements. The plaintiff's assertion that during this time he notified the defendant of his claim and was promised payment is not sustained by the referee.

But the plaintiff claims further that the Orphans' Court of the District of Columbia had no jurisdiction of the estates of these beneficiaries; that the entire proceedings in probate are void, and afford the defendant no protection; that he should be treated as an intermeddler, and held to the extent of his receipts for the payment of any just claim against the decedent's estate. If the proceedings of a court of the District of Columbia are entitled to the same credit that is required to be given to judicial proceedings in one of the States, they are nevertheless open to examination upon the question of jurisdiction. Story Confl. Laws, § 609. Only two things are essential to the jurisdiction of a probate court; the death of the person upon whose estate letters are granted, and domicile or assets within the district. 3 Redf. Wills, 121, note. It is not necessary to consider the difference in the nature of these requirements as affecting the validity of an administration based upon an erroneous finding, nor the conflict of authority in regard to matters of presumption and record. By all the cases, if these two facts exist, and appear of record as judicially ascertained, the grant of administration is valid, however irregular the proceedings may have been. And if these two matters properly appear of record, the administration is at least *prima facie* valid, and he who questions it must establish its invalidity. 33 Am. Dec. 239, note.

The plaintiff seeks to impeach the defendant's appoint-

ments on both of these grounds. It is said that the petitions for administration did not allege the death of the persons upon whose estates administration was asked, and that without an allegation the fact could not be proved. If the alleged defect sufficiently appeared, it could not be given the effect claimed. The jurisdiction of the court did not depend upon the formality of the petition, nor upon an adherence to any technical rule of procedure. The records of appointment and the letters issued would doubtless show that the appointments were upon the estates of persons ascertained to be deceased; but neither of these have been placed before us. The referee reports that the defendant was duly appointed administrator of certain beneficiaries, who throughout the report are referred to as persons deceased. It is evident that no question was made before the referee touching the jurisdictional requirement under consideration, and that for this reason nothing more than the general finding above stated was asked for or deemed necessary. A general finding of this character will sustain an administration when nothing further is submitted to enable the court to judge of its legality.

The plaintiff further objects that this claim was not an asset upon which administration could be granted, and that consequently there was no estate within the jurisdiction. Passing the question whether the action of the Orphans' Court is conclusive upon this point, we think the obligation assumed by the United States was an asset in the jurisdiction where provision was made for its satisfaction. A debt due the deceased is property in the jurisdiction of the debtor. The right to prove a claim upon this fund, even if granted as a pure gratuity, must be treated as a demand against a debtor for the purpose of administration. The money could be obtained only by an administrator whom the tribunal charged with the distribution of the fund would recognize as having authority to sue in that jurisdiction. Moreover, it

has been held that a claim of this character will pass under the designation of "property" to an assignee in insolvency in proceedings subsequent to the act of 1882. *Goreley* v. *Butler*, 147 Mass. 8. Doubtless these claims of the second class must be treated as having had no existence prior to the passage of that act. *Taft* v. *Marsily*, 120 N. Y. 474; *Heard* v. *Sturgis*, 146 Mass. 545. But it is not necessary that the assets upon which administration is granted should have been within the jurisdiction at the time of the decease. The rule as usually stated by text writers would seem to require this, but it is evident that an adherence to the rule as thus stated would sometimes exclude assets from administration. Certainly a debtor would not be permitted to defeat the collection of his debt by moving from one jurisdiction to another after the death of the creditor. The subsequent creation of an obligation to be collected by the representative of the deceased presents the same necessity. The jurisdiction must exist in favor of the estate wherever legal proceedings are necessary to establish its right to property, and none but a local administrator can secure the recognition of the courts. *Pinney* v. *McGregory*, 102 Mass. 188.

It is further objected that in the petitions upon which the defendant's letters were granted the petitioner represented himself to be a creditor, and that it appears from the accounts submitted that he was not. If this were sufficient to determine that the representation was untrue, and that the administration was granted on the ground of that representation and not of other representations which the petitions may have contained, the objection could not avail the plaintiff. The matter does not touch the question of jurisdiction. Neither the residence of a creditor within the district, nor the application of one, if creditors there were, was essential to the validity of the proceedings. It was within the power of the court, in certain circumstances, to make an appointment not based upon kinship or interest. Schoul. Exrs. §

115. If administration is granted in disregard of the pref-
erences recognized by law, it may be revoked upon applica-
tion of those whose rights have been ignored. Schoul.
Exrs. §§ 152, 153. True, the general rule is that foreign
judgments may be impeached for fraud as well as want of
jurisdiction. It is said, however, that a grant of administra-
tion cannot be impeached for fraud in its procurement. 1
Woern. Am. Law Admn. § 266. But the plaintiff insists
that it may be as against the administrator, if he be impli-
cated in the fraud. It is to be noticed that the question as
presented here touches only the priority of right to a neces-
sary administration. In such a case we think it must at
least be held that one who is entitled to interfere cannot
stand by until the administration is completed, and then
charge the administrator as if there had been no grant.
The plaintiff knew that the defendant was administering
upon these estates, and if he claimed an interest that enti-
tled him to the administration in place of the defendant, he
should have asserted his right.

But the plaintiff insists that the foreign administrators
were entitled to recognition, and that the Court of Commis-
sioners could not lawfully render judgments in favor of an
administrator appointed in the district. The foreign admin-
istrators certainly had no better standing than an adminis-
trator appointed in one of the States would have had. In
*Wyman* v. *Halstead*, 109 U. S. 654, it is said that the
United States may, in their discretion, exercised through
their appropriate officers, pay a debt due the estate of a
deceased person, either to the administrator appointed in the
State of his domicile, or to an ancillary administrator ap-
pointed in the District of Columbia. In *Mackey* v. *Coxe*,
18 How. 100, an administration in the district had been re-
quired by the treasury department as a prerequisite to the
payment of a claim. The court said that the claim might
have been paid, and indeed should have been paid, to the

attorney in fact of the principal administrators, but did not speak of the ancillary administration otherwise than as one required through abundant caution. The court established to allow these claims having held that judgments could be obtained only by administrators appointed in the district, it is not important to consider whether some other course might properly have been taken.

It is true that an award of the Court of Commissioners is only a determination of the amount and validity of the claim as against the United States, and precludes no one who claims to have been entitled to the allowance from asserting his right to the funds against the recovering party in other tribunals. *Heard* v. *Sturgis*, 146 Mass. 545. But if it could be held that the Court of Commissioners awarded these funds to one not entitled to receive them, the plaintiff could gain nothing by it, for he has no title to assert.

The defendant cannot be held liable to pay for the plaintiff's services on the ground that they were contracted for by the foreign administrators. The defendant's administration was ancillary, and independent of the administration in the country of domicile. There is no privity between principal and ancillary administrators. Story Confl. Laws, § 522; *Low* v. *Bartlett*, 8 Allen 259.

*Judgment reversed, and judgment for defendant.*